A95A2348. PHILLIPS v. MacDOUGALD et al.
(464 SE2d 390)

BIRDSONG, Presiding Judge.

Appellant/plaintiff Dr. Hugh Johnson Phillips appeals the superior court's grant of summary judgment to appellees/defendants Dan MacDougald, Jr. et al. Appellant filed notice of direct appeal with the Supreme Court of Georgia asserting that a certain constitutional provision was in issue. The Supreme Court transferred the case to this court for lack of jurisdiction.

This suit is for damages for tortious interference with contract, intentional infliction of emotional distress, and abusive litigation. Appellant Dr. Hugh Johnson Phillips was a professor and chairman of the Criminal Justice Department and director of the Criminal Justice Institute of Albany State College. The Dougherty County Commission hired appellant and his co-researcher to make an evaluation of a certain criminal rehabilitation program developed by appellee MacDougald and others. The commission previously had voted to terminate this program but reconsidered their action. Appellant and his co-researcher evaluated the program, sharply criticized it, questioned MacDougald's integrity, and concluded the program was not as effective as claimed; however, no recommendation was made whether the commission should continue program funding. Thereafter, the commission chose to reaffirm its earlier action to terminate the program. Subsequently, appellee Dan MacDougald, Jr., filed a defamation action against appellant and others. A local newspaper ran a series of articles about the controversy wherein certain quotes were attributed to appellee Dan MacDougald, Jr. which appellant contends were uttered maliciously and with intent to harm appellant's professional standing with his employer and peers. The trial court granted summary judgment against appellees on all counts of the defamation action and concluded that "Phillips and [his co-researcher] should not be punished through the vehicle of a lawsuit simply because they rendered an unfavorable report." During the course of discovery in the defamation suit, appellees apparently obtained information that appellant had in 1962 and 1967 been convicted of two crimes and had not disclosed his criminal record to the college in his employment application. (Appellant asserts that his nondisclosure was the result of legal advice he received that these crimes had been given "first offender" disposition.) Appellee Dan MacDougald, Jr., thereafter filed a quo warranto action, challenging appellant's right to hold public office

as a college professor; he also sent a letter providing information concerning the claimed nondisclosure on appellant's employment application to Mr. Henry Neal, Executive Secretary of the Board of Regents. The local newspaper ran an article concerning the quo warranto action and again published numerous quotes attributed to appellee Dan MacDougald, Jr. concerning appellant. Appellant's counsel served appellees with notice that the quo warranto action was abusive and patently flawed and requested suit withdrawal. MacDougald refused to terminate the suit voluntarily, and the trial court granted appellant's motion to dismiss. MacDougald appealed the dismissal to the Supreme Court of Georgia which affirmed the dismissal. *MacDougald v. Phillips*, 262 Ga. 778 (425 SE2d 652); for additional appellate history, see *MacDougald v. Phillips*, 213 Ga. App. 575 (445 SE2d 357) (vacating award of attorney fees). Appellant subsequently was relieved of his administrative responsibilities at Albany State College and was informed his contract would not be renewed. He thereafter commenced this litigation.

Appellant enumerates three errors asserting that the trial court erred in granting summary judgment as to his claims for tortious interference with contract, intentional infliction of emotional distress, and abusive litigation, respectively. *Held*:

1. The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

2. The trial court erred in part in granting summary judgment to appellees as to the tortious interference with contract claim.

(a) Appellees contend that appellant's contract of employment was unenforceable having been procured by fraud. Fraud renders a contract voidable at the election of the injured party (OCGA § 13-5-5), but fraud does not render a contract void per se. To allow appellees to prevail in their contention would in effect give the third-party appellees the power of treating the employment contract as being void, notwithstanding that the injured party, Albany State College, had not declared the employment contract void. In fact, Albany State College elected for reasons of policy to continue to treat the employment contract valid and binding while MacDougald's quo warranto suit was pending. Clearly appellees, not being injured parties to the employment contract, lacked the power to void the contract directly. OCGA § 13-5-5. One cannot do indirectly what the law does not allow to be done directly. *Kingsmill Village &c. v. Homebanc &c. Bank*, 204 Ga. App. 900, 902 (2) (a) (420 SE2d 771).

(b) An intentional and non-privileged interference by a third party with existing contract rights and relations constitutes a tort for which an action shall lie. *Southern Business Machines &c. v. Norwest Financial &c.*, 194 Ga. App. 253, 258 (3) (390 SE2d 402). Such interference with a contract right or relationship need not result in a

breach of a contract to be actionable; it is sufficient if the invasion retards the performance of the duties under the contract or makes the performance more difficult or expensive. Id. As a general rule, it is a question of fact, and thus for the jury, whether a defendant has played a material and substantial part in causing plaintiff's loss of any benefits of the contract. Id. at 259 (3). However, it is a well-established exception that proximate cause, causation, and related issues can be decided as a matter of law by the court when there exists a plain, palpable, and undisputed case where reasonable minds cannot differ as to the conclusions to be reached. See *Wade v. Mitchell*, 206 Ga. App. 265, 268 (4) (424 SE2d 810); see also *Abernathy v. Dover*, 139 Ga. App. 323 (228 SE2d 359).

The record establishes without contradiction that an investigation was being conducted, regarding appellant's prior criminal record, before the letter sent by appellee Dan MacDougald, Jr., was received by the Executive Secretary of the Board of Regents. However, during appellees' taking of the deposition of Dr. Billy Black, President, Albany State College, the following testimonial colloquy occurred: "[AP-PELLEES' COUNSEL]: Dr. Phillips alleges in this lawsuit that Dan MacDougald, Jr., and June MacDougald have caused him to lose his job. You're the guy who makes the decisions about his job. What do you say about that? [DR. BLACK]: I've already testified that, when you raised the question did it have anything to do with it, I answered that yes but it was not the determining factor. . . . But I'll answer it here again to be absolutely sure. The answer is still the same. This was not the determining factor in making the decision to non-renew Dr. Phillips. . . . [APPELLEES' COUNSEL]: Did the Board of Regents or any member of its staff have any input in your decision not to renew Phillips' contract? [DR. BLACK]: No." There does not exist in this case plain, palpable, and undisputed facts establishing that the conduct of appellees played no part in the non-renewal of appellant's employment contract. Accordingly, we see no basis to depart from the general rule of *Southern Business Machines*, supra, that it is for the jury to determine whether a defendant has played a material and substantial part in causing plaintiff's loss of any benefits of the contract at issue by sending correspondence regarding Dr. Phillips' criminal record to the Executive Secretary of the Board of Regents. The trial court erred to the limited extent that it inherently granted partial summary judgment on a tortious interference of contract claim based solely upon the sending of this correspondence to the Executive Secretary of the Board of Regents. Whether that act played a material and substantial part in causing plaintiff's loss of any benefit from the non-renewal of his contract of employment presented a question for jury determination. Moreover, *Medlin v. Carpenter*, 174 Ga. App. 50, 55 (8) (329 SE2d 159) is distinguishable from the operative facts of

this case.

(c) Any statements attributed to appellee Dan MacDougald, Jr. by the press, which were taken from quotes within official court documents, cannot provide a basis for a claim of tortious interference with contract. "All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged." OCGA § 51-5-8. The interference required to support a claim of tortious interference must be both intentional and non-privileged. *Southern Business Machines*, supra at 258. To the extent the trial court inherently granted partial summary judgment as to any privileged statements contained in court documents filed by MacDougald and thereafter reported by the news media, it did not err.

(d) To the extent that appellees assert defenses based on interpretations of constitutional provisions of the Georgia Constitution of 1983, we conclude that such contentions are without merit. By the transfer of this appeal to this court, the Supreme Court implicitly has ruled there exist no valid contentions by either party that are grounded upon an unsettled interpretation of the constitution of this state. See *Johnston v. Atlanta Humane Society*, 173 Ga. App. 416, 418 (326 SE2d 585) (physical precedent only), citing *Cassells v. Bradlee Mgmt. Svcs.*, 161 Ga. App. 325, 326 (1) (291 SE2d 48).

(e) We decline to hold that appellant's contract of employment with Albany State College was void as against public policy. See generally OCGA § 13-8-2 (a). Further, this Court lacks jurisdiction to construe, particularly as to questions of first impression, the scope of Georgia Constitution of 1983, Art. II, Sec. II, Par. III, and its application to the facts of this case. Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1); *Kolker v. State*, 193 Ga. App. 306, 307 (1) (387 SE2d 597), aff'd 260 Ga. 240 (391 SE2d 391).

(f) *Medlin*, supra at 53 (5), cited by appellees, which involved, inter alia, slander and defamation claims, is distinguishable and not controlling as to appellant's tortious interference with contract claim. Also distinguishable is *Stern v. United States Gypsum*, 547 F2d 1329, 1342-1343 (7th Cir.) involving a First Amendment defense in a Civil Rights Act suit alleging conspiracy to prevent plaintiff from performing his official federal duties. Moreover, the United States Supreme Court is the only federal court whose opinions this court is bound to follow. *Hilton Constr. Co. v. Martin &c. Contractors*, 166 Ga. App. 40, 45 (303 SE2d 119).

(g) Further, we hold that, as a matter of law, "a claim for tortious interference with contractual relations cannot be predicated upon an allegedly improper filing of a lawsuit." *Jacobsen v. Garzo*, 542 A2d 265, 268 (3) (SC Vt.); see also *Aetna &c. Ins. Co. v. Harley*, 365

FSupp. 1210, 1214 (7) (N. D. Ga.).

In *Jacobsen*, supra, the Supreme Court of Vermont observed that tortious interference is a right of action arising from the recognition of broad social policies protecting a citizen's legitimate interests in reasonable expectations of economic advantage and of the right to pursue one's business free from undue interference or molestation. The court then acknowledged the existence of a strong public counter-policy, backed by a general state constitutional provision, in favor of free access to the courts. Balancing these rights, the *Jacobsen* court recognized that to curb the more serious abuses of lawsuit filing, two carefully restricted torts were recognized, that is, abuse of process and malicious prosecution. The *Jacobsen* court then concluded: "If the well-reasoned balance thereby struck between free access and remedy for serious abuse 'is really to mean anything then we must not permit . . . circumvention by affording an . . . unrestricted action under a different label.' [Cit.] . . . [A]s a matter of law, the filing of a lawsuit alone cannot constitute tortious interference with contractual relations." Id. at 268 (3). In Georgia, there exist the same broad social policies giving rise to recognition of the tort of tortious interference; there also exists, inter alia, the same strong counter-policy, backed by a state constitutional provision (see generally Ga. Const. of 1983, Art. I, Sec. I, Par. XII), giving a general right of access to the courts to prosecute or defend one's own cause therein. Also, in Georgia, a plaintiff is provided with reasonable access to the courts for serious abuses of lawsuit filing through utilization of the carefully developed torts of malicious prosecution (see generally OCGA § 51-7-40 et seq.) and abusive litigation (see generally OCGA § 51-7-85 et seq.). Also OCGA § 51-7-85 provides: "This article is the exclusive remedy for abusive litigation." Clearly, the tortious interference claim in the case sub judice is grounded on a contention that the lawsuit at issue was improperly filed being without legitimate legal foundation.

A citizen of this state is not guaranteed any *particular* form or method of state procedure. Due process is satisfied if the citizen " 'has reasonable notice and opportunity to be heard, and to present his claim or defense, due regard being had to the *nature* of the proceeding and the *character* of the rights which may be affected by it. [Cit.]' " (Emphasis supplied.) *Dept. of Transp. v. Del-Cook Timber Co.*, 248 Ga. 734, 739 (4) (a) (285 SE2d 913) and cases cited therein. Nor does there exist any known constitutional provision preventing a state from prescribing reasonable and appropriate causes of action, and precluding the chilling proliferation of unnecessary causes of action of a specific kind or class, so long as the basis of distinction is, as here, real and the limitation imposed has reasonable relation to a legitimate object (compare OCGA § 51-7-85). See *State of Ga. v. Sanks*, 225 Ga. 88, 89 (1) (166 SE2d 19); compare *Sneakers &c. v.*

*Cobb County*, 265 Ga. 410, 411 (3) (455 SE2d 834). Moreover, proliferation of unnecessary causes of action for the alleged improper filing of lawsuits would have a chilling effect on the exercise by citizens of their right of access to the courts. This state appears to have a compelling governmental interest in encouraging citizens to settle disputes through the court, rather than through self-help which can foster prolonged acrimony and even violence among otherwise peaceable citizens. Therefore, today we establish precedent (see generally *Crosby v. Potts*, 8 Ga. App. 463, 466 (69 SE 582)) precluding a claim of tortious interference as a remedy for the alleged improper or unwarranted filing of a lawsuit.

To the extent that the trial court's grant of summary judgment inherently included therein a grant of partial summary judgment to appellees on the issue whether a claim of tortious interference can be predicated upon the filing of a lawsuit (whether or not it be meritorious), such a grant of partial summary judgment was not error.

3. Likewise, "the mere filing of a lawsuit is not the type of humiliating, insulting or terrifying conduct which will give rise to a claim for the intentional infliction of emotional distress." *Rolleston v. Huie*, 198 Ga. App. 49, 51 (2) (400 SE2d 349) and cases cited therein. Regarding the mailing of the letter to the Executive Secretary of the Board of Regents, we find as a matter of law, that under the attendant circumstances and based upon the trial record this conduct did not "rise to the requisite level of outrageousness and egregiousness." *Moses v. Prudential Ins. Co. &c.*, 187 Ga. App. 222, 226 (369 SE2d 541). The trial court did not err in granting appellees summary judgment as to the intentional infliction of emotional distress claim.

4. Appellees presented evidence that appellant failed to deliver a letter demanding that appellees' defamation action suit, Dougherty County Superior Court Civil Action File No. 90-V-1612, be withdrawn; appellant offered no evidence establishing such a demand. The written notice required by OCGA § 51-7-84 (a) is a condition precedent to *any* claim for abusive litigation. Appellant failed to carry his burden under *Lau's Corp.*, supra, to establish compliance with the condition.

We find, as a matter of law, that at the time the quo warranto suit was prosecuted before the trial court, it was not substantially groundless; the prosecution of this civil action was not "[w]ithout substantial justification" within the meaning of OCGA § 51-7-81. The ultimate holding of the Supreme Court in *MacDougald*, 262 Ga. 778, supra, does not alter this determination. The trial court did not err in granting summary judgment to appellees as to appellant's abusive litigation claim.

*Judgment affirmed in part and reversed in part. Johnson and Smith, JJ., concur.*

DECIDED NOVEMBER 7, 1995 —
RECONSIDERATION DISMISSED NOVEMBER 27, 1995 — 

*McKee & Barge, Patrick W. McKee, Christopher J. Ramig*, for appellant.

*McLaughlin, MacDougald, Hendon & Miller, Daniel MacDougald III, Johnson & Montgomery, Harry W. MacDougald*, for appellees.