**BRITT/PAULK INSURANCE AGENCY, INC., Plaintiff,**

v.

**VANDROFF INSURANCE AGENCY, INC., Equipment Dealers Insurance, and Northbrook Property and Casualty Insurance Company, Defendants.**

**Civil Action No. 3:95–cv–62–RLV.**

United States District Court,
N.D. Georgia,
Newnan Division.

Oct. 21, 1996.

Order on Reconsideration
Dec. 3, 1996.

J. Littleton Glover, Jr., Glover & Davis, Newnan, GA, for Plaintiff.

William R. Reece, III, Spix Krupp & Reece, Atlanta, GA, for Vandroff.

Richard Thomas Fulton, Andrew McCampbell Gibson, Natalie J. McKinney, Leigh A. Morrissey, Alston & Bird, Atlanta, GA, for Northbrook.

## ORDER

VINING, Senior District Judge.

The plaintiff filed the instant action, seeking to recover damages from the defendants due to their alleged breach of contract and tortious interference with contractual and business relations. This matter is currently before the court on defendant Vandroff Insurance Agency, Inc.'s motion for partial summary judgment [40–1] and defendant Northbrook Property and Casualty Insurance Company's motion for summary judgment [43–1]. For the reasons set forth below, this court DENIES Vandroff's motion and GRANTS IN PART and DENIES IN PART Northbrook's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1987 Northbrook Property and Casualty Insurance Company ("Northbrook"), an insurance carrier, entered into an agency agreement with Vandroff Insurance Agency, Inc. ("Vandroff"), an insurance agency located in Jacksonville, Florida, in which Vandroff agreed to sell numerous types of insurance on Northbrook's behalf. In 1990 Vandroff and Northbrook entered into an arrangement whereby Vandroff agreed to serve as an agent for Northbrook on an inland marine insurance program. Inland marine insurance is a type of property and casualty insurance that insures against damage to a particular class of property, such as construction equipment, data processing equipment, fine arts, motor truck cargo, etc. In June 1991, Vandroff commenced negotiations with Britt/Paulk Insurance Agency, Inc. ("Britt/Paulk"), an insurance agency located in Carrollton, Georgia, concerning the possibility of Britt/Paulk's assisting Vandroff in the marketing of the inland marine insurance program. Under the terms of the proposal, Vandroff would provide the market, i.e., the insurance carrier, and Britt/Paulk would provide the customer base. The parties desired to capitalize on Vandroff's contacts with insurance carriers and on Britt/Paulk's contacts in the equipment dealers industry to sell inland marine insurance for logging equipment, agricultural equipment, and other large pieces of commercial equipment ("the equipment dealers program"). Britt/Paulk was to offer the equipment dealers program to a network of retail insurance agencies, also referred to as "sub-producers," through whom Britt/Paulk sold a variety of other insurance products.

On or about June 27, 1991, representatives from Vandroff, Britt/Paulk, and Northbrook met in Jacksonville, Florida, to discuss the proposed equipment dealers program. Britt/Paulk and Vandroff subsequently executed a letter agreement. Pursuant to the terms of the June 27, 1991, letter agreement, Britt/Paulk was obligated to market the equipment dealers program. Further, the letter agreement stipulated that Northbrook would provide monthly detailed loss information. No Northbrook representative, however, signed the June 27 letter agreement.

In case Britt/Paulk's participation in the program were discontinued, the letter agreement provided:

> In the event of discontinuing the business relationship, as long as the Program continues with Northbrook, of business generated by Britt/Paulk, [Vandroff] will continue to pay 10% of the commission for as long as business continues in force including any new business generated by Sub-Producers.

*See* Plaintiff's Exhibit 1, para. (H).

On or around July 1, 1991, Northbrook and Vandroff executed an addendum to their 1987 agency agreement to permit Vandroff to sell inland marine insurance under the equip-

ment dealers program. The addendum's provisions specified Vandroff's premium and provided that Vandroff was Northbrook's exclusive agent to sell certain types of inland marine insurance in designated states. The June 27, 1991, letter agreement was later modified by Britt/Paulk and Vandroff in a letter dated May 14, 1992. Under the provisions of the modified agreement, Vandroff agreed to increase Britt/Paulk's commission to fourteen percent.

The equipment dealers program continued for approximately three years. Britt/Paulk and its sub-producers performed the marketing, Vandroff performed the administration, and Northbrook provided the coverage. On or about June 23, 1994, Northbrook placed a "moratorium" on the equipment dealers program due to its unprofitability. When the program was placed on a moratorium in June 1994, Britt/Paulk's marketing efforts with respect to the program ceased. In July 1994, Vandroff gave Britt/Paulk official notice of the program's termination. In late September 1994, however, Vandroff and Northbrook agreed to reinstitute the inland marine insurance program on a modified basis, whereby Vandroff would receive a significantly reduced commission and Britt/Paulk would no longer be involved.

On October 3, 1994, Vandroff representatives met with Britt/Paulk's officials concerning the new agreement which had reached between Vandroff and Northbrook. In attendance at the meeting were Britt/Paulk representatives, Douglas Britt and John Paulk, and Vandroff officials, David Vandroff and Charles Ward. At the meeting, Vandroff contends that it informed Britt/Paulk that Vandroff and Northbrook had decided to revive the equipment dealers program on a modified basis and that Britt/Paulk would no longer be involved. In addition, Vandroff asserts that its representatives and Britt/Paulk's representatives agreed at the meeting to terminate the agreement of June 27, 1991, as amended on May 14, 1992, and substitute a new business arrangement. Under the terms of this purported new oral agreement, Vandroff assumed virtually all of the management aspects of the equipment dealers program. Britt/Paulk, however, was al-

legedly supposed to receive a commission of six percent for policies in effect on October 31, 1994. Pursuant to the terms of this alleged oral agreement, Vandroff contends that the parties agreed that neither Vandroff nor Northbrook was required to provide Britt/Paulk with any loss information.

On the other hand, Britt/Paulk asserts that it informed Vandroff that it would favorably consider terminating the June 27, 1991, contract, as amended, if Vandroff, *inter alia*, promptly furnished it with loss information from the equipment dealers program so that it could quickly solicit a new insurance carrier for its own inland marine insurance program.

In November 1994, Britt/Paulk began requesting from Vandroff loss information from the equipment dealer program. Vandroff refused to provide this information to Britt/Paulk, as it claimed that it was under no obligation to do so. Vandroff argues that the June 27, 1991, letter agreement between the parties was extinguished by a new, oral agreement entered into by the parties at the October 3 meeting, in which there was no provision that Britt/Paulk be furnished with loss information. Britt/Paulk demanded this loss information on several more occasions, but Vandroff continued to decline to supply such information. It is undisputed that Britt/Paulk received loss information on at least an intermittent basis during its participation in the program. After Britt/Paulk had assembled its own loss information from the equipment dealers program, obtained a new insurance carrier, and reentered the market, Vandroff allegedly notified Britt/Paulk that the program loss information which it had previously withheld would be furnished.

On July 21, 1995, Britt/Paulk filed suit against the defendants. In its complaint, Britt/Paulk sets forth numerous tortious interference claims against both Vandroff and Northbrook, a punitive damages claim against both defendants, and a breach of contract claim against Vandroff.

After several extensions, discovery closed in this case on March 26, 1996, with the exception of the taking of a limited number of specified depositions. On April 12, 1996,

two weeks after the close of discovery, Britt/Paulk moved this court for leave to amend its complaint to assert two entirely new claims against Northbrook: a breach of contract claim and a promissory estoppel claim. In its proposed amendment, Britt Paulk, for the first time, alleged that Northbrook representatives orally agreed to all of the terms of the written agreement executed by it and Vandroff on June 27, 1991.[1] Accordingly, Britt/Paulk asserted that Northbrook had also breached the contract by failing to provide it with the loss information from the equipment dealers program. The plaintiff's counsel claimed that at the time that they filed the complaint their client had failed to effectively communicate to them the "firm facts necessary to substantiate a claim that Northbrook representatives had also agreed to the terms of the contractual agreements set out in the written documentation actually executed by representatives of Vandroff and Britt/Paulk." See Plaintiff's Brief In Support Of Motion For Leave To Amend, at 6–7. The plaintiff also sought to assert a new claim for attorney's fees and costs against both Northbrook and Vandroff. On August 27, 1996, this court denied Britt/Paulk's motion for leave to amend, finding that it unduly delayed in filing its motion for leave to amend and that it had offered no legitimate reason for such delay.

In Count One of its complaint, Britt/Paulk alleges that Vandroff breached the June 27, 1991, letter agreement between the parties because Vandroff failed to provide Britt/Paulk with certain loss information from the equipment dealers program after October 1994. Vandroff has moved this court for partial summary judgment on Britt/Paulk's breach of contract claim, contending that the agreement of October 3, 1994, constituted a novation of the June 27, 1991, agreement and, as such, Vandroff was not obligated to

furnish Britt/Paulk with any loss information. Britt/Paulk argues that it agreed to modify and terminate the June 27, 1991, contract only if it was immediately provided with copies of loss information, which were allegedly necessary in order for Britt/Paulk to be able to expeditiously secure a new insurance carrier to provide coverages formerly supplied by Northbrook. Vandroff has not moved the court for summary judgment on Britt/Paulk's tortious interference and punitive damages claims.

In Counts Two, Three, Four, and Five of its complaint, Britt/Paulk asserts four tortious interference claims against Northbrook: (1) tortious interference with Britt/Paulk's contracts with the sub-producers and insureds; (2) tortious interference with Britt/Paulk's business relations with the sub-producers and insureds; (3) tortious interference with Britt/Paulk's contract with Vandroff; and (4) tortious interference with Britt/Paulk's business relations with Vandroff. In addition, Britt/Paulk asserts a punitive damages claim against Northbrook in Count Six. Northbrook has moved this court for summary judgment on all of the claims asserted by Britt/Paulk against it.

## II. LEGAL ANALYSIS

### A. The Legal Standard

 Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156; 90 S.Ct. 1598, 1608, 26

1. In its motion for leave to amend, Britt/Paulk contended that at the 1991 Jacksonville meeting, John Berger, a Northbrook employee, orally promised to provide Britt/Paulk with certain "loss information." Britt/Paulk asserted that its representatives and John Berger agreed that this loss information would contain data that detailed the overall profitability of the inland marine insurance program. In addition, it also alleged that Northbrook was a party to the June 27,

1991, letter agreement and was, therefore, bound to provide it with loss information. Because the court denied Britt/Paulk's motion for leave to amend, however, none of these allegations is relevant to the court's analysis of the motions for summary judgment. No such allegations were ever pled by Britt/Paulk in its original complaint, which serves as the sole basis for all of its claims against the defendants in this action.

L.Ed.2d 142 (1970); *Johnson v. Clifton,* 74 F.3d 1087, 1090 (11th Cir.1996). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Clifton,* 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).[2]

In deciding a motion for summary judgment, it is not the court's function to decide genuine issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.*

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. "When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* (citations omitted).

## B. Britt/Paulk's Breach of Contract Claim Against Vandroff

In its brief in support of its motion for partial summary judgment and in its reply brief, Vandroff contends that this court should grant its motion for summary judgment on Britt/Paulk's breach of contract claim because the June 27, 1991, letter agreement between the parties, as amended, which provided that Vandroff was obligated to furnish Britt/Paulk with loss information from the equipment dealers program, was extinguished by a new, oral agreement entered into by the parties on October 3, 1994. Specifically, Vandroff argues that the undisputed evidence establishes that the October 3 oral agreement constituted a valid novation of the original agreement between the parties. Accordingly, it contends that it has not breached any agreement, as the October 3 business arrangement did not require Vandroff to furnish Britt/Paulk with any loss information from the equipment dealers program.

A novation or accord and satisfaction is in itself a contract and must have all of the elements of a de novo contract. *Feely v. First American Bank of Georgia,* 206 Ga. App. 53, 56, 424 S.E.2d 345 (1992); *Griffiths v. Phenix Supply Company, Inc.,* 192 Ga. App. 651, 651, 385 S.E.2d 789 (1989). Accordingly, there must be a meeting of the minds if the novation or accord and satisfaction is to be valid and binding. *Id.* Under Georgia law, in every novation there are four requisites: (1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Feely,* 206 Ga.App. at 56, 424

---

**2.** The Eleventh Circuit has held that the nonmoving party need not necessarily " 'produce evidence in a form that would be admissible at trial . . . to avoid summary judgment' "; instead, its evidence must be " 'reduc[ible] to admissible evidence.' " *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1444 (11th Cir.1991) (quoting *Celotex,* 477 U.S. at 324–27, 106 S.Ct. at 2553–55). When a party has given clear answers to unambiguous deposition questions which negate the existence of any genuine issue of materi-

al fact, however, that party cannot thereafter create such issue and thereby defeat summary judgment with an affidavit that merely contradicts, without explanation, the deposition testimony. *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 658 (11th Cir.1984). Moreover, the mere verification by affidavit of one's own conclusory allegations is insufficient to oppose a motion for summary judgment. *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir.1984).

S.E.2d 345; *Griffiths,* 192 Ga.App. at 652, 385 S.E.2d 789. "The question of the parties' mutual intention for accord and satisfaction or novation is ordinarily a question of fact reserved for jury determination." *Feely,* 206 Ga.App. at 56–57, 424 S.E.2d 345; *see also Derosa v. Shiah,* 205 Ga.App. 106, 421 S.E.2d 718 (1992). Only in instances where the parties' intent is shown by clear, plain, and palpable evidence so that a jury can draw but one conclusion may the issue of intent be decided as a matter of law. *Feely,* 206 Ga. App. at 57, 424 S.E.2d 345.

■ After carefully reviewing the evidence in the record, the court finds, *inter alia,* that the parties have produced conflicting, credible evidence concerning whether a valid and binding oral agreement was actually entered into by the parties on October 3 and, if so, what the terms of the alleged novation were. At a minimum, the parties dispute whether Vandroff was required to provide Britt/Paulk with any loss information from the equipment dealers program as a part of the novation which allegedly occurred during the October 3, 1994, discussions between the parties. Because a jury could draw more than one reasonable conclusion about this item, and other items relating to the purported novation, the court denies Vandroff's motion for partial summary judgment on Britt/Paulk's breach of contract claim.

## C. Britt/Paulk's Tortious Interference Claims Against Northbrook

In its complaint, Britt/Paulk contends that Northbrook tortiously interfered with its contractual and business relations with its sub-producers and insureds (Counts Two and Three). In addition, Britt/Paulk asserts that Northbrook tortiously interfered with its contractual and business relations with Vandroff (Counts Four and Five). Specifically, it claims that Northbrook and Vandroff conspired to interfere with its contractual relationships with its sub-producers and the insureds to whom it had marketed the inland marine insurance by attempting to prevent it from reentering the market to compete with the new Northbrook/Vandroff program by failing to provide it with the loss information that Britt/Paulk alleges Vandroff was required to provide under the terms of the June 27 contract and/or the purported October 3 oral agreement. Without this loss information, Britt/Paulk asserts that it was unable to reinstitute its relationship with its sub-producers and their insureds for approximately eight months after its involvement in the equipment dealers program was terminated, as it was extraordinarily difficult to solicit an insurance carrier to replace Northbrook without the subject loss information. Once it was finally able to find another insurance carrier for its own inland marine insurance program, Britt/Paulk contends that it had already suffered financial injury, as it had been unable to continue its relationships with those sub-producers and insureds to whom it had previously marketed the equipment dealers program. Moreover, Britt/Paulk claims that Northbrook induced Vandroff to breach its purported obligations to Britt/Paulk to provide it with loss information from the equipment dealers program and interfered with its business relations with Vandroff.

■ Under Georgia law, tortious interference with business relations is a distinct and separate tort from that of tortious interference with contractual relations, although most of the elements of the two torts are similar. *Renden, Inc. v. Liberty Real Estate Limited Partnership,* 213 Ga.App. 333, 334, 444 S.E.2d 814 (1994). Proof of a valid and enforceable contract is not required as an element of a cause of action for tortious interference with business relations. *Id.* Rather, to recover under a theory of tortious interference with business relations, a plaintiff must show that the defendant (1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff financial injury. *Id.*

■ To recover under a theory of tortious interference with contractual relations, a plaintiff must establish that the defendant (1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) interfered with a third

party's then existing contractual rights and relations; and (4) caused the plaintiff financial injury. *Phillips v. MacDougald,* 219 Ga.App. 152, 154, 464 S.E.2d 390 (1995). To sustain a claim for tortious inference with contractual or business relations, a plaintiff must show that the defendant is an intermeddler acting improperly and without privilege. *Renden,* 213 Ga.App. at 336, 444 S.E.2d 814. Moreover, under either theory of recovery, the plaintiff must establish that the defendant is a "stranger" to the business relationship or contract. *Id.* As a general rule, the determination as to whether a defendant has tortiously interfered with a plaintiff's contractual or business relations is a question properly reserved for the jury. *MacDougald,* 219 Ga.App. at 154, 464 S.E.2d 390.

Contrary to its general allegations in Count Two of its complaint, Britt/Paulk now asserts that it "does not claim that Northbrook interfered with the existing insurance contracts between Northbrook, Vandroff, Britt/Paulk, the subproducers, and the insureds." Plaintiff's Brief In Opposition To Defendants' Motions For Summary Judgment, at pp. 31–32. Instead, "Britt/Paulk contends that Northbrook interfered with the general business relationship between Britt/Paulk, its subproducers, and the insureds." *Id.* at 32. Accordingly, the court finds that Britt/Paulk has abandoned its claim that Northbrook tortiously interfered with its contractual relations with its sub-producers and insureds. The court, therefore, grants Northbrook's motion for summary judgment on this claim.

After reviewing the evidence in the record on the three remaining tortious interference claims, this court finds that a reasonable jury could conclude that Northbrook tortiously interfered with Britt/Paulk's business relations with its sub-producers and insureds, tortiously interfered with its contractual relations with Vandroff, and tortiously interfered with its business relations with Vandroff. The court concludes that sufficient evidence exists from which a jury could find that Northbrook and Vandroff conspired to interfere with

Britt/Paulk's business relationships with its sub-producers and insureds, subsequent to Britt/Paulk being terminated from the equipment dealers program, by failing to provide it with the program's loss information to which Britt/Paulk contends that it was entitled under its purported contract with Vandroff. Moreover, in light of the court's ruling that genuine issues of material fact exist as to whether Vandroff was contractually required to provide Britt/Paulk with loss information from the equipment dealers program, *see* subsection II(B), at pp. 11–12, the court finds that genuine issues of material fact exist as to whether Northbrook interfered with Britt/Paulk's contractual and business relations with Vandroff. Accordingly, the court denies Northbrook's motion for summary judgment on Britt/Paulk's claim that Northbrook tortiously interfered with its business relations with its sub-producers and insureds and its claims that Northbrook tortiously interfered with its contractual and business relations with Vandroff.

### III. CONCLUSION

For all the foregoing reasons, this court hereby **DENIES** Vandroff's motion for partial summary judgment and **GRANTS IN PART** and **DENIES IN PART** Northbrook's motion for summary judgment.

SO ORDERED.

### ORDER ON RECONSIDERATION

This matter is currently before the court on Northbrook Property and Casualty Insurance Company's motion for reconsideration. In its motion, Northbrook requests the court to reconsider the court's October 22, 1996, order in which the court granted in part and denied in part Northbrook's motion for summary judgment. For the reasons outlined below, this court hereby **GRANTS** Northbrook's motion for reconsideration and dismisses Britt/Paulk Insurance Agency, Inc.'s remaining tortious interference claims asserted against Northbrook.[1]

---

1. Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the bur-

In its complaint, Britt/Paulk asserts four tortious interference claims against Northbrook: (1) tortious interference with Britt/Paulk's contractual relations with its sub-producers and insureds; (2) tortious interference with Britt/Paulk's business relations with its sub-producers and insureds; (3) tortious interference with Britt/Paulk's contractual relations with Vandroff; and (4) tortious interference with Britt/Paulk's business relations with Vandroff.[2] In its October 22, 1996, order, this court granted Northbrook's motion for summary judgment on Britt/Paulk's claim that Northbrook tortiously interfered with Britt/Paulk's contractual relations with its sub-producers and insureds and denied its motion on all of the other claims. In its motion for reconsideration, Northbrook contends that this court should reconsider its decision because, *inter alia*, the evidence in the record fails to establish that Northbrook was a "stranger" to the relationships at issue.

As the court observed in its October 22 order, under Georgia law, tortious interference with business relations is a distinct and separate tort from that of tortious interference with contractual relations, although most of the elements of the two torts are similar. *Renden, Inc. v. Liberty Real Estate Limited Partnership*, 213 Ga.App. 333, 334, 444 S.E.2d 814 (1994). Proof of a valid and enforceable contract is not required as an element of a cause of action for tortious interference with business relations. *Id.* Rather, to recover under a theory of tortious interference with business relations, a plaintiff must show that the defendant (1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff financial injury. *Id.*

To recover under a theory of tortious interference with contractual relations, a plaintiff must establish that the defendant (1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) interfered with a third party's then existing contractual rights and relations; and (4) caused the plaintiff financial injury. *Phillips v. MacDougald,* 219 Ga.App. 152, 154, 464 S.E.2d 390 (1995). To sustain a claim for tortious inference with contractual or business relations, a plaintiff must establish that the defendant is a "stranger" to the business relationship or contract. *Renden,* 213 Ga.App. at 336, 444 S.E.2d 814. As a general rule, the determination as to whether a defendant has tortiously interfered with a plaintiff's contractual or business relations is a question properly reserved for the jury. *MacDougald,* 219 Ga. App. at 154, 464 S.E.2d 390.

In denying Northbrook's motion for summary judgment on Britt/Paulk's claim that Northbrook tortiously interfered with its business relations with its sub-producers and insureds and its claims that Northbrook tortiously interfered with its contractual and business relations with Vandroff, this court found:

> [A] reasonable jury could conclude that Northbrook tortiously interfered with Britt/Paulk's business relations with its sub-producers and insureds, tortiously interfered with its contractual relations with Vandroff, and tortiously interfered with its business relations with Vandroff. The court concludes that sufficient evidence exists from which a jury could find that Northbrook and Vandroff conspired to interfere with Britt/Paulk's business relationships with its sub-producers and insureds, subsequent to Britt/Paulk being terminated from the equipment dealers program, by failing to provide it with the

---

den of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Johnson v. Clifton,* 74 F.3d 1087, 1090 (11th Cir.1996). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In deter-

mining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Clifton,* 74 F.3d at 1090.

2. A detailed explanation of the facts, procedural history, and claims in this matter is set forth in the court's October 22, 1996, order.

program's loss information to which Britt/ Paulk contends that it was entitled under its purported contract with Vandroff. Moreover, in light of the court's ruling that genuine issues of material fact exist as to whether Vandroff was contractually required to provide Britt/Paulk with loss information from the equipment dealers program, *see* subsection II(B), at pp. 11–12, the court finds that genuine issues of material fact exist as to whether Northbrook interfered with Britt/Paulk's contractual and business relations with Vandroff.

October 22, 1996, order, at pp. 15–16.

In its analysis, however, this court did not closely analyze the Georgia Court of Appeals admonition that a defendant cannot, as a matter of law, tortiously interfere with a plaintiff's business or contractual relations unless the plaintiff establishes that the defendant is a "stranger" to the business or contractual relations in question. *See Barnwell v. Barnett & Company,* 222 Ga.App. 694, 476 S.E.2d 1 (1996); *Renden,* 213 Ga.App. 333, 444 S.E.2d 814 (1994); *Lake Tightsqueeze, Inc. v. Chrysler First Financial Services Corporation,* 210 Ga.App. 178, 435 S.E.2d 486 (1993); *Jefferson–Pilot Communications Company v. Phoenix City Broadcasting, Ltd.,* 205 Ga.App. 57, 421 S.E.2d 295 (1992). After carefully and thoroughly re-evaluating this principle of law, the Georgia courts' interpretation of such law, and the undisputed facts of this case, the court reconsiders its conclusions outlined in the October 22 order and finds that the defendant is not a "stranger" to the business and contractual relations at issue.

 As noted above, Georgia law requires that a plaintiff show that the defendant is a "stranger" to the business and contractual relations at issue in order to prevail on tortious interference with business and contractual relations claims. *Barnwell,* 222 Ga.App. at 695, 476 S.E.2d 1; *Renden,* 213 Ga.App. at 336, 444 S.E.2d 814. In fact, this is an essential element of tortious interference with business and contractual relations claims. *Id.* In the context of a tortious interference claim, the term "stranger" has been interpreted broadly by Georgia courts. *See generally Renden,* 213 Ga.App. 333, 444

S.E.2d 814; *Jefferson–Pilot,* 205 Ga.App. 57, 421 S.E.2d 295. Thus, under the law of this state, a defendant does not have to be a nonparty to a contract in order to be characterized as a "stranger." *Id.* As Northbrook points out, Georgia courts have held that a defendant is not a "stranger" to a contract or business relationship when: (1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations. *See Barnwell,* 222 Ga.App. 694, 476 S.E.2d 1; *Renden,* 213 Ga.App. 333, 444 S.E.2d 814; *Lake Tightsqueeze,* 210 Ga.App. 178, 435 S.E.2d 486; *Jefferson–Pilot,* 205 Ga.App. 57, 421 S.E.2d 295.

 As this court detailed in its October 22 order, Britt/Paulk, Vandroff, and Northbrook worked together to sell Northbrook's inland marine insurance products from 1991 until 1994. They marketed and sold the insurance through the Equipment Dealers Program. Under the terms of the program, Northbrook provided the product, or the inland marine insurance. Vandroff acted as Northbrook's general agent for the program, performing most of the administration. Britt/Paulk, on the other hand, served as the marketing entity for the program. Specifically, Britt/Paulk marketed Northbrook's inland marine insurance to insurance agents, or sub-producers, who in turn sold Northbrook's insurance directly to consumers, or the insureds. In October 1994, Britt/Paulk was terminated from the program. Vandroff continued, however, to serve as Northbrook's general agent and to sell inland marine insurance on Northbrook's behalf.

Britt/Paulk contends that Northbrook tortiously interfered with its business relations with its sub-producers and insureds by conspiring with Vandroff to prevent it from re-entering the market to compete with the new Northbrook/Vandroff inland marine insurance program. Specifically, Britt/Paulk asserts that Northbrook and Vandroff con-

spired to withhold the Equipment Dealers Program loss information that Britt/Paulk alleges Vandroff was required to provide it under the terms of the June 27, 1991, letter agreement and/or the purported October 3, 1994, oral agreement.[3] Without this loss information, Britt/Paulk asserts that it was unable to reinstitute its relationship with its sub-producers and their insureds for approximately eight months after its involvement in the equipment dealers program was terminated, as it was extraordinarily difficult to solicit an insurance carrier to replace Northbrook without the subject loss information. Once it was finally able to find another insurance carrier for its own inland marine insurance program, Britt/Paulk contends that it had already suffered financial injury because it had been unable to continue its relationships with those sub-producers and insureds to whom it had previously marketed the equipment dealers program. Moreover, Britt/Paulk claims that Northbrook tortiously interfered with Britt/Paulk's June 27, 1991, letter agreement and/or its October 3, 1994, oral contract with Vandroff and tortiously interfered with its business relations with Vandroff by inducing Vandroff to breach its purported obligations to Britt/Paulk to provide it with loss information from the Equipment Dealers Program.

After reviewing this court's denial of Northbrook's motion for summary judgment on these tortious interference claims and re-examining all of the evidence contained in the record in the light most favorable to the plaintiff, the court concludes that it must dismiss all of Britt/Paulk's remaining tortious interference claims asserted against Northbrook because Britt/Paulk has failed to establish that Northbrook was a "stranger" to the allegedly injured relations. The court finds that Britt/Paulk's relationship with Vandroff was an inextricable part of the predominant agency relationship between Northbrook and Vandroff. It is uncontroverted that Britt/Paulk was marketing Northbrook's products. Without Northbrook's insurance to market and sell, the purported contractual and business relations at issue between Vandroff and Britt/Paulk would not have existed. In this instance, Britt/Paulk's contractual and business relations with Vandroff were clearly dependent upon Vandroff's relationship with Northbrook. As Britt/Paulk representatives have conceded, the equipment dealers program, like other multi-tiered marketing structures, functioned as a series of dependent relationships. See Paulk Deposition, at pp. 30–31, 57. Moreover, absent the existence of the general agency relationship between Vandroff and Northbrook and Northbrook's inland marine insurance products, Britt/Paulk would have had no insurance to market and sell to its sub-producers and insureds. Accordingly, the court holds, as a matter of law, that Northbrook was not a "stranger" to the relationships at issue. The court, therefore, **GRANTS** Northbrook's motion for reconsideration and **DISMISSES**, with prejudice, Britt/Paulk's remaining tortious interference claims asserted against Northbrook.

SO ORDERED.

---

3. Under the terms of the June 27, 1991, letter agreement between Britt/Paulk and Vandroff, the parties agreed that if Britt/Paulk was terminated from the Equipment Dealers Program, Vandroff would provide Britt/Paulk with the program's loss information. Vandroff contends that this written agreement was extinguished by an October 3, 1994, oral agreement between the parties in which they agreed that Vandroff would not be required to furnished the subject loss information to Britt/Paulk. In its October 22, 1996, order, however, this court held that the parties had produced conflicting, credible evidence concerning whether a valid and binding oral agreement was actually entered into by the parties on October 3 and, if so, what the terms of the alleged novation were. "At a minimum, the parties dispute whether Vandroff was required to provide Britt/Paulk with any loss information from the equipment dealers program as a part of the novation which allegedly occurred during the October 3, 1994, discussions between the parties." October 22, 1996, order, at pp. 11–12.