[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11268
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 30, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-01494-RLV

STATE BANK OF TEXAS,

                                        Plaintiff -
                                        Counter Defendant -
                                        Appellee,

    versus

MUKESH C. PATEL,
RAJESH C. PATEL,

                                        Defendants -
                                        Counter Claimants -
                                        Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 30, 2011)

Before BARKETT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

The State Bank of Texas ("Bank") brought this action against Mukesh and Rajesh Patel, seeking a judgment against the Patels on their breach of guarantees on Diplomat Construction Inc.'s ("Diplomat") mortgage note. The Patels now appeal the denial of their motion for judgment on the pleadings and the grant of summary judgment in favor of the Bank. The Patels argue that the district court erred in (1) determining that the Bank's lawsuit was not a claim for a deficiency judgment requiring judicial confirmation under O.C.G.A. § 44-14-161(a); (2) finding that the Bank was entitled to judgment as a matter of law, despite the fact that the Bank did not pierce each of the Patels' affirmative defenses[1]; and (3) granting the Bank judgment as a matter of law on the Patels' counterclaim of tortious interference. No reversible error has been shown; we affirm.[2]

Our review is *de novo*. *Huff v. DeKalb Cnty., Ga.*, 516 F.3d 1273, 1277 (11th Cir. 2008). "Because federal jurisdiction over this matter is based on diversity, [Georgia] law governs the determination of the issues on this appeal." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).

---

[1] The Patels waived this error by not raising it before the district court. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

[2] Even if we were to agree with the Patels and dismiss the instant suit, the foreclosure sale has since been confirmed. Thus, the Bank would be able to re-file suit and receive another judgment against the Patels.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The facts are set out in the district court's opinion:

On or about January 16, 2002, Diplomat borrowed $10,500,000 from Integrity Bank ("Integrity"). In conjunction with that loan, Diplomat executed a promissory note payable to Integrity. The note was secured by real property which included a hotel located in Fulton County, Georgia. In its complaint, the plaintiff alleges that the defendants personally guaranteed Diplomat's obligations under the loan.

On or about August 29, 2008, the Federal Deposit Insurance Corporation ("FDIC") took over Integrity. Later, the FDIC . . . sold all of Integrity's right, title, and interest in the loan and the corresponding loan documents to the [Bank]. On or about March 3, 2009, and after Diplomat had failed to make payments under the loan for a period of several months, the [Bank] notified Diplomat of its intent to conduct a non-judicial foreclosure on April 7, 2009, of

3

the hotel property securing the loan. Prior to the scheduled non-judicial foreclosure, Diplomat filed bankruptcy. The [Bank] alleges at the time the filing of Diplomat's bankruptcy that Diplomat and, in turn the defendants here, who are alleged to be guarantors of Diplomat's loan, owed the [Bank] over ten million dollars.

The [Bank] alleges that because an automatic stay was imposed by Diplomat's bankruptcy filing that it could not conduct the foreclosure. According to the [Bank], it elected to file this suit on May 12, 2009, against the defendants who allegedly serve as the guarantors of Diplomat's loan.

In November 2009, the bankruptcy court hearing Diplomat's bankruptcy case entered an order granting relief from the automatic stay, which allowed the [Bank] to exercise its state law and contractual rights and remedies. On December 14, 2009, the [Bank] filed a complaint for the appointment of a receiver in this court. In the receivership case, the [Bank] requested the appointment of

a receiver with the authority to market and sell the hotel property securing Diplomat's loan. Despite Diplomat's opposition, this court held that a receivership was unnecessary and that the [Bank] should be allowed to conduct a non-judicial foreclosure of its interest in the hotel property securing Diplomat's loan.

Pending the [Bank]'s foreclosure sale of the hotel property, this court entered an order staying this suit. On April 6, 2010, the [Bank] conducted a non-judicial foreclosure sale of the hotel property, and on May 3, 2010, the [Bank] filed its verified report of non-judicial foreclosure sale and petition for confirmation of non-judicial sale in the Superior Court of Fulton County, Georgia.

Because this case was stayed for an extended period of time, this court lifted the stay in this matter on October 26, 2010, and permitted the [Bank] to a file reply brief in support of its motion for summary judgment. Prior to the court's decision to lift the stay in this suit, the defendants

5

argued for the first time that this suit violates O.C.G.A. § 44-14-161(a).

The district court then went on to consider the merits of the parties' motions.

*Motion for Judgment on the Pleadings*

The Patels argue that the district court should have dismissed the Bank's complaint with prejudice for failure to state a claim because it failed to satisfy a condition precedent to suit. Specifically, the Patels contend that the Bank improperly sued them for breach of guarantees before it confirmed the foreclosure sale it conducted on the collateral securing the loan, in violation of O.C.G.A. § 44-14-161(a). The district court disagreed with the Patels, finding § 44-14-161(a) inapplicable because the action was filed before the non-judicial foreclosure sale and because the Bank was not pursuing a "deficiency" against the Patels as the term is defined in § 44-14-161. Thus, the court denied the Patels' motion.

On appeal, the Patels argue that the district court erred by finding that the Bank's lawsuit was not a deficiency judgment. Instead, the Patels note that Georgia courts define a "deficiency judgment" as "'a judgment for that part of a debt secured by a mortgage not realized from a sale of the mortgaged property.'"

*Se. Timberlands, Inc. v. Haiseal Timber, Inc.*, 479 S.E.2d 443, 445 (Ga. App. 1996) (quoting *Hill v. Moye*, 471 S.E.2d 910, 912 (Ga. App. 1996)). The Patels urge us to look to the substance of the action, not its form, to determine whether the action sought a deficiency judgment.

The Bank contends that because it had yet to foreclose on the property, and thus had no deficiency to recover, the suit was not a deficiency action. The Bank asserts that § 14-44-161(a) did not bar it from first suing the Patels on their guarantees and then, eleven months later, conducting a non-judicial foreclosure sale of the collateral. The Bank asserts that § 14-44-161(a) requires a creditor who has *already* sold real estate in a non-judicial foreclosure to wait for confirmation before pursuing a deficiency judgment. Indeed, in all of the cases the Patels cite, there had actually been a foreclosure sale, pre-suit, which left a deficiency. *See, e.g.*, *Archer Capital Fund v. TKW Partners, LLC*, No. 1:08-CV-2747-TWT, at *1 (N.D. Ga. July 27, 2009); *Redman Indus., Inc. v. Tower Prop., Inc.*, 517 F. Supp. 144, 149 (N.D. Ga. 1981); *Haiseal Timber*, 479 S.E.2d at 445 (explaining the pending action was a deficiency action because "Haiseal filed this action only after the property Southeast pledged as security did not bring at the foreclosure sale the amount owed on the note"); *Hill*, 471 S.E.2d at 912 (explaining that the suit

7

sought a "deficiency judgment because the property they pledged did not bring at a foreclosure sale the amount of the debt owed.").

We agree with the Bank. Section 14-44-161(a) provides: "*When any real estate is sold on foreclosure*, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and *at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract*," the person instituting the foreclosure proceedings must first get confirmation of the sale before they can try to obtain a deficiency judgment. The plain language of § 14-44-161(a) requires that the collateral actually be sold at foreclosure before the protections of the statute are triggered. And in the instant case, at the time the Bank filed suit on the guarantees, the Bank had no deficiency to recover because the Bank had not conducted a non-judicial sale of Diplomat's property—Diplomat's pending bankruptcy precluded it from doing so.

We also recognize that under Georgia law, secured creditors are not put to an election of remedies in deciding whether to sue on a note or foreclose on collateral. *Brown v. Rooks*, 242 S.E.2d 128, 129 (Ga. 1978) (per curiam); *River Farm, LLC v. SunTrust Bank*, 699 S.E.2d 771, 772 (Ga. App. 2010); *Jamison v. Button Gwinnett Sav. Bank*, 419 S.E.2d 91, 91–92 (Ga. App. 1992). Thus, the Bank was within its rights to first pursue its contractual remedies against the

8

Patels (the guarantors), and the Bank's later sale of the collateral did not transform the underlying suit into one that was void *ab initio*. As we stated previously, the suit was not one to collect a "deficiency" because there was no deficiency to collect at the time it was filed. Accordingly, the district court properly denied the Patels' motion for judgment on the pleadings.

*Tortious Interference Claims*

Next, the Patels argue that the Bank was not entitled to summary judgment on their tortious interference counterclaim. Essentially, the basis of their claim was that the Bank's "attempts to enforce the guarantees against [the Patels] by filing [the guaranty action] has caused third-party lenders not to enter into business relations with them." But the district court held these allegations did not give rise to an actionable claim for tortious interference with business relations. The Patels now argue that the district court improperly construed their tortious interference counterclaim. Rather than challenge the lawsuit, the Patels argue that they were alleging that the Bank tortiously interfered with Diplomat's efforts to purchase the FDIC's interest in the note. The Patels assert that, although the lawsuit had been harmful, it was the negative publicity in the business community surrounding the calling in of the guarantees, well before the lawsuit was filed, that caused the problems with Diplomat's lenders.

A viable tortious interference with business relations counterclaim requires proof that the counterclaim defendant "(1) acted improperly and without privilege, (2) acted purposely and maliciously with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the [counterclaimants], and (4) caused [the counterclaimants] financial injury." *See Camp v. Eichelkraut*, 539 S.E.2d 588, 592 (Ga. App. 2000).

Under Georgia law, the Bank's actions in pursuing the guaranty action cannot be considered improper or without privilege. *See BKBJ P'ship v. Moseman*, 644 S.E.2d 874, 866 (Ga. App. 2007) ("[A] claim for tortious interference with contractual relations cannot be predicated upon an allegedly improper filing of a lawsuit." (citing *Phillips v. MacDougald*, 464 S.E.2d 390, 395 (Ga. App. 1995)). Although the Patels now try to re-characterize their tortious interference claim, they did recognize that "at its core, the . . . counterclaim is based on [the] Bank's decision to accelerate the Diplomat Loan and call in the guarantees—and of the fallout associated with that decision." And Rajesh Patel testified in his deposition that the lawsuit was causing problems with their lenders. Simply put, the Bank's attempts to enforce the guarantees against the Patels, by "calling in the guarantees" and by filing the guaranty action, cannot form the basis of a tortious interference claim. Accordingly, because we may affirm for any

10

ground supported in the record, *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001), we affirm the judgment of the district court.

**AFFIRMED.**