A92A1604. FEELY v. FIRST AMERICAN BANK OF GEORGIA, N.A.
(424 SE2d 345)

BIRDSONG, Presiding Judge.

Suit was brought by appellee bank to obtain money claimed due and owing on certain notes and a guaranty agreement. Appellant James D. Feely filed a counterclaim averring fraud. Appellant appeals from the order of the state court granting summary judgment on behalf of appellee for $28,216.98, and denying appellant's motion for summary judgment.

Appellant Feely and Norman L. Heckert were the sole shareholders, officers, and directors of Aftersale Profit Concepts Corporation (APC). To establish a credit rating and to obtain a revolving line of credit for APC, Feely and Heckert in their capacity as corporate officers executed a six-month, unsecured, $50,000 promissory note with appellee bank on March 2, 1988. About that same date, Feely and Heckert in their individual capacities both executed guaranty agreements of this loan and of any extensions or renewals thereof. On September 1, 1988, Feely and Heckert in their respective corporate capacities executed a six-month, unsecured, $50,000 renewal note of the original revolving line of credit. On March 1, 1989, Feely and Heckert in their respective corporate capacities executed another six-month, unsecured, $50,000 renewal note of the revolving line of credit. Apparently by this time, the entire line of credit had been drawn down by APC. On September 1, 1989, Feely and Heckert executed yet another unsecured, $50,000 note renewing the revolving line of credit. Although this note reflects on its face that it was executed by Feely and Heckert in both their corporate and individual capacities, there is some testimony indicating the men may have erroneously signed the note in the wrong place, and that this was considered by the parties

to be a corporate obligation. When this note was executed, the maturity date allegedly was left blank, and a bank employee subsequently filled in the maturity date as being 90 days hence. Appellant claims that it was intended that this note was to mature six months from date of execution as did all prior notes, and it is the conduct of the bank in fixing a shorter maturity date that in essence forms the basis for appellant's counterclaim for fraud. The branch manager of the bank disputes this contention and testified that the parties were aware of the terms of the note. The note of September 1, 1989 reflects on its face that, unlike the previous revolving line of credit notes, it was executed in the form of a term note.

After learning of the asserted maturity date of the September 1 note, Feely and Heckert negotiated with the bank to convert the loan obtained by the APC notes to individual loans secured by certain real estate, or the legal interest therein, owned respectively by Feely and Heckert. According to this negotiation, Feely was to execute a note for 60 percent of the obligation or $30,000, and Heckert was to execute a note for 40 percent of the obligation or $20,000. Additionally, each man was to cross-guaranty the other's obligation and to execute a guaranty agreement to that effect. As an alleged interim measure, a $50,000 note was to be jointly executed by them.

Thus, on December 28, 1989, Feely and Heckert executed yet another note in the form of a term note for an original loan. This note was not captioned as a renewal note. It was signed jointly by Feely and Heckert in their individual capacities, and bore on its face a maturity date of "2/1/90" (February 1, 1990).

Thereafter, Feely and Heckert were scheduled to go to the bank and execute the individual $30,000 and $20,000 notes, and their cross-guaranty agreements. On February 19, 1990, Feely appeared and executed his $30,000 note and guaranty agreement; Heckert did not appear and has never executed an individual note or cross-guaranty. Feely has remained current in the payments of his $30,000 note.

The note of September 1, 1989, reflects on its face that it was paid in full on December 29, 1989, the day after the execution of the note of December 28. The branch manager testified in his deposition that the note of September 1, 1989, "was paid in full by the proceeds of the joint note" of December 28, 1989. And Feely admits in his deposition that the note of September 1 has been "paid off."

The bank initiated suit against both Feely and Heckert for collection of the remaining outstanding obligation of $20,000, and obtained default judgment against Heckert. The bank asserts it is entitled to summary judgment against Feely based on either the unsatisfied $20,000 obligation of the joint note of December 28 or on the unsatisfied guaranty agreement executed by Feely on February 19. *Held*:

1. Appellant asserts the trial court erred in denying his counterclaim for fraud and by denying his motion for summary judgment and summarily dismissing said counterclaim. The counterclaim has two counts. The first count in essence avers a fraudulent misrepresentation by appellee that the note of December 28, 1989, was for a six-month term; the second count avers a fraudulent misrepresentation by appellee that said note and subsequent personal guarantee would lapse after defendants signed the new security and loan agreements. Questions of bad faith and fraud are ordinarily for the jury. *Guillebeau v. Jenkins*, 182 Ga. App. 225, 231 (2) (355 SE2d 453). However, where there exists no evidence from which an inference of fraud may be reasonably drawn, the trial court properly may award summary judgment to the defendant-movant. Id. at 231-232; accord *Leachman v. Cobb Dev. Co.*, 229 Ga. 207, 209 (190 SE2d 537).

As to the first count, the counterclaim on its face alleges a fraud as to the note captioned as "note 1" in plaintiff's complaint, that is, the note executed on December 28, 1989. Appellant clarified in his deposition that his claim of fraud, as to the subsequent addition of a three-month maturity date therein, was in regard to the note executed on September 1, 1989. Nevertheless, he failed, prior to the trial court's ruling on the motions for summary judgment, to move to amend the faulty averment in Count 1 of the counterclaim to conform to his deposition testimony. See, e.g., OCGA § 9-11-13 (f). The provisions of OCGA § 9-11-15 will not operate to amend automatically Count 1 of the counterclaim to conform to evidence introduced in a deposition taken during the discovery process and prior to trial. Cf. *Cross v. Cross*, 230 Ga. 91 (195 SE2d 439). Accordingly, the count of fraud averred in Count 1 of the counterclaim did not have to be submitted to the jury.

As to the second count of the counterclaim there exists but a shadowy semblance of an issue of fraud. Summary judgment law does not require the defending party to show that no issue of fact remains, but rather that no genuine issue of material fact remains; and while there may exist some shadowy semblance of an issue, the case may nevertheless be decided as a matter of law where, as here, the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion. See generally *Peterson v. Liberty Mut. Ins. Co.*, 188 Ga. App. 420, 424 (373 SE2d 515). Moreover, the alleged misrepresentation regarding the "vacation" of the note of December 28, 1989, concerns a question of law. " 'Misrepresentations as to a question of law cannot constitute remediable fraud. . . . This is especially true where there is no confidential relationship between the parties. (Cits.)' " *Stephens v. C & S Nat. Bank*, 170 Ga. App. 793, 794 (2) (318 SE2d 216).

2. Appellant argues that the trial court erred in granting appel-

lee's motion for summary judgment because appellant raised the defense of novation, and novation is a jury question. In essence, appellant claims that his execution of the $30,000 note, the terms of which he has not breached, constituted a novation of the $50,000 loan obligation.

(a) The $50,000 revolving line of credit obligation, originating on March 2, 1988, and subsequently renewed by execution of certain notes, was paid in full and satisfied on December 29, 1989, with the consent of the parties. Therefore, any issue regarding the continued validity of the original note and subsequent renewals of the original line of credit obligation has been rendered moot. In fact, appellant admits by way of deposition testimony that this note was "paid off," as he desired for tax purposes "to convert this to a personal note." As an integral part of this procedure, a new personal note of December 28, 1989, was executed by Feely and Heckert, which was signed in their individual capacities.

(b) Appellant's assertion that the note of December 28 was an interim note which remained in effect only until vacated, when appellant subsequently executed his $30,000 note of February 19, 1990, and cross-guaranty agreement, is not compatible with the clear intent of the parties as reflected upon the face of the note itself. See OCGA §§ 11-3-109; 13-2-3; cf. *Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (359 SE2d 659). Further, appellant stated in his deposition that he did sign the $50,000 note, executed on December 28, 1989, and that "this was an interim loan *subject to* the loan being split *and mutually secured* by deeds of trust on [his and Heckert's] property." (Emphasis supplied.) The clear and unequivocal meaning of this testimony is that the parties intended the loan to be valid, but *subject to being subsequently* split and *mutually secured* as agreed. Any other testimony of record by Feely, including testimonial-type evidence presented by him in a personal affidavit form that is inconsistent with this deposition testimony and without any reasonable explanation therefor appearing in the record, is subject to the contradictory testimony rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) and progeny. Compare *Hudgens v. Broomberg*, 262 Ga. 271 (416 SE2d 287) (1992).

"A novation or accord and satisfaction is in itself a contract and must have all the elements of a de novo contract. Therefore, there must be a meeting of the minds. . . . In every novation there are four essential requisites . . . [including] (2) the agreement of all the parties to the new contract. . . . If these essentials, or any one of them, are wanting, there can be no novation." (Citations and punctuation omitted.) *Griffiths v. Phenix Supply Co.*, 192 Ga. App. 651-652 (385 SE2d 789). The question of the parties' mutual intention for an accord and satisfaction or novation is ordinarily a question of fact re-

served for jury determination. *Mayer v. Turner*, 142 Ga. App. 63, 64 (234 SE2d 853). However, where, as in this case, the intent of the parties is shown by clear, plain, and palpable evidence so that the jury can draw but one conclusion, the issue of intent can be decided as a matter of law and the summary judgment can be granted. Compare *Sutton v. Gen. Elec. Credit Corp.*, 154 Ga. App. 522 (268 SE2d 789). It is clear from the record that the so-called interim note was valid and binding according to the terms on its face, and was not to be vacated before expiration of term of maturity absent sooner payment of all principal and interest due, or subject to the loan subsequently being appropriately split and mutually secured by Feely and Heckert. Thus, the record establishes unequivocally that the parties did not intend a novation to occur merely by Feely's unilateral execution of the subsequent $30,000 note and cross-guaranty agreement. We find as a matter of law that novation did not occur. See *Sutton*, supra.

Moreover, " '[w]here, after the execution of a promissory note, a renewal or new note is executed for the same debt, it is the general rule that the second instrument does not of itself operate as a payment, or accord and satisfaction, or novation extinguishing the first note, unless there is an agreement between the parties to that effect.' " *Wages v. Nat. Bank &c.*, 169 Ga. App. 514 (313 SE2d 771); accord *Remler v. Coastal Bank*, 179 Ga. App. 25, 27 (345 SE2d 79). Nor can a partial rescission of a contract occur without mutual assent of the parties. See *Farr v. McCook*, 95 Ga. App. 749, 751 (1) (98 SE2d 584). The existence of a novation or similar agreement in connection with the execution of the second note may be shown by parol evidence. *Farmers &c. Bank v. Rogers*, 55 Ga. App. 38 (1) (189 SE 274). However, appellant testified by way of deposition regarding the nature of the agreement as to the alleged subsequent payment, accord and satisfaction or novation of the December 28, 1989 note. That agreement in effect provided that the valid obligation would continue during the life of the note, unless either principal and interest were earlier paid or there was a splitting between and mutual securing of the note by appellant and Heckert. To the extent there exists testimony by appellant from which an inference to the contrary may be drawn, no reasonable explanation has been provided for the inconsistency within the meaning of *Prophecy Corp.*, supra, and *Hudgens*, supra. Assuming arguendo, the bank had split the primary note obligation between appellant and Heckert, uncontroverted evidence of record clearly and conclusively establishes that there was never a *mutual securing* of the December 28 note obligation as intended by the parties. Therefore, we find as a matter of law that there has been no novation.

We note that the bank did proceed to accept timely payments of

principal and interest on the subsequent $30,000 note of appellant and also elected to sue only on $20,000 of the $50,000 note of December 28, 1989, even though Heckert reneged in executing his note and guaranty, and that appellant appears to have acted in reliance on said bank conduct. However, no waiver of right to claim for the remaining $20,000 due and owing on the December 28, 1989 note has occurred, there being no similar conduct by the bank regarding that amount on which appellant could reasonably rely to his prejudice. See *Mauldin v. Weinstock*, 201 Ga. App. 514, 520 (4) (411 SE2d 370).

3. Appellant asserts that the trial court erred in granting appellee's motion for summary judgment because appellant received no consideration for the note of December 28, 1989. We disagree. The record is uncontroverted that appellant and Heckert accepted the $50,000 from the December 28, 1989 note to pay off the obligations on the $50,000 line of credit arising from the various line of credit notes previously discussed and term note of September 1, 1989. Appellant also gained additional time to attempt to split the loan obligation into two, longer-term obligations between him and Heckert, as above discussed. In addition, by executing the joint individual note of December 28, 1989, both appellant and Heckert obtained the destruction of any corporate legal obligation flowing from the note of September 1, 1989, and its progeny; and, as a consequence they also obtained per force the forbearance of the bank as to the prosecution of any claim based on the $50,000 line of credit corporate obligation. These benefits provided adequate consideration for the execution of the joint $50,000 obligation of the December 28, 1989 note. See generally OCGA §§ 13-3-41; 13-3-42.

Assuming arguendo only Heckert and not appellant had received the monetary benefit of the December 28, 1989 note, "where two parties execute a note as comakers, one of such comakers is not allowed to plead failure of consideration because he did not receive the money named on the face of the note. If either of them received the money, both are bound." *Feltman v. Nat. Bank of Ga.*, 146 Ga. App. 434, 436 (1) (246 SE2d 447).

There is at most a shadowy semblance of an issue of lack of consideration for the December 28, 1989 note; therefore, the trial court did not err in granting summary judgment on the grounds asserted in this enumeration. *Peterson*, supra.

4. In view of our holding as to the note of December 28, 1989, we need not address the contentions of appellant regarding the validity of his subsequent $30,000 note and cross-guaranty agreement due to an alleged lack of consideration or otherwise.

All precedent cited by appellant in support of his enumerations of error are not controlling.

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

DECIDED OCTOBER 29, 1992.

*Weener & Associates, Phillip H. Weener, William P. Mason*, for appellant.

*Schwall & Ruff, Emory A. Schwall, Frederick B. Whittington III*, for appellee.