A03A0523. MIL-SPEC INDUSTRIES CORPORATION
v. PYROTECHNIC SPECIALTIES, INC.
(586 SE2d 7)

BARNES, Judge.

Mil-Spec Industries Corporation ("Mil-Spec") appeals the trial court's grant of a directed verdict on Mil-Spec's contract claims against Pyrotechnic Specialties, Inc. This appeal arises from contracts between these parties concerning Mil-Spec's purchase of delay composition[1] from Pyrotechnic Specialties.

When the case was tried, the trial court ruled that Pyrotechnic Specialties was entitled to a directed verdict because the contract on which Mil-Spec relied was unenforceable. Mil-Spec contends the trial court erred by granting the directed verdict and also contends the

---

[1] Delay composition is a mixture of chemicals that is used to make fuses for hand grenades. The main ingredient in the mixture is zirconium nickel powder.

trial court erred by entering a final judgment on a jury verdict that was tainted by the court's exclusion of Mil-Spec's claims for damages under that contract.

1. A directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence, with all reasonable deductions and inferences, construed in favor of the nonmoving party, demands a certain verdict. OCGA § 9-11-50 (a); *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (1) (392 SE2d 268) (1990). Further, the trial court is not authorized to weigh the evidence or decide issues of fact. *Barber v. Atlas Concrete Pools*, 155 Ga. App. 118, 119 (2) (270 SE2d 471) (1980).

2. Construed in Mil-Spec's favor and giving it the benefit of all reasonable deductions and inferences arising therefrom, the evidence shows that on April 15, 1999, using a purchase order, Mil-Spec contracted with Pyrotechnic Specialties for a quantity of delay composition to be delivered to Mil-Spec by June 15, 1999. Under a contract with the Mexican government, Mil-Spec would then deliver the delay composition to Mexico by July 6, 1999. The contract with Mexico had a ten percent penalty if Mil-Spec delivered the delay composition after July 6, 1999, or the product was defective.

Pyrotechnic Specialties did not deliver the delay composition by June 15, 1999. According to Mil-Spec, Pyrotechnic Specialties initially said that it did not perform because it disagreed with the contract's payment terms. Pyrotechnic Specialties explained later that it could not deliver the delay composition because the German supplier of zirconium nickel would not sell to Pyrotechnic Specialties on credit because Pyrotechnic Specialties had declared bankruptcy two years before. Pyrotechnic Specialties did not deliver the delay composition to Mil-Spec, and Mil-Spec did not satisfy its obligations under its Mexican contract.

Needing the delay composition as soon as possible, and believing its best solution was to secure the product from Pyrotechnic Specialties, on July 21, 1999, using another purchase order, Mil-Spec again contracted with Pyrotechnic Specialties for delivery of the product. Mil-Spec's president testified at trial that this was a second contract, and at another time referred to it as the "new" contract.

Under this contract, Pyrotechnic Specialties was to deliver the same amount of delay composition. Because of Pyrotechnic Specialties' difficulty in securing the zirconium nickel from its supplier on credit, Mil-Spec agreed to purchase the zirconium nickel directly from the supplier and then provide it to Pyrotechnic Specialties. The price of the second contract was approximately $51,000 less than the first contract. The terms of the contract required Pyrotechnic Specialties to deliver the delay composition by September 27, 1999, and

25 percent of the contract price would be paid on delivery with the remainder to be paid within 30 days.

Although Mil-Spec actually made the first payment on September 24, 1999, before the scheduled delivery date, Pyrotechnic Specialties did not deliver the delay composition as scheduled. Instead, Pyrotechnic Specialties demanded that the full payment be made on delivery, allegedly because Pyrotechnic Specialties contended it had been informed that Mil-Spec might not pay the balance. Pyrotechnic Specialties, however, did not request assurance of performance by Mil-Spec until October 6, 1999, after Pyrotechnic Specialties itself had again defaulted by not delivering the product.

When Mil-Spec threatened legal action if Pyrotechnic Specialties did not deliver on the date specified in the contract, Pyrotechnic Specialties offered to discount the contract price by two percent, if Mil-Spec would pay for the delay composition upon delivery. Pyrotechnic Specialties also offered to refund Mil-Spec's payment, to sell the delay composition to others, and to pay Mil-Spec for the cost of the zirconium nickel Mil-Spec bought and provided to Pyrotechnic Specialties.

The record shows that Mil-Spec filed a petition for an interlocutory injunction and for specific performance of the contract, and Pyrotechnic Specialties answered and counterclaimed for damages resulting from Mil-Spec's anticipatory breach of the contract. After a hearing, the parties entered into a consent agreement under which Pyrotechnic Specialties would furnish the delay composition due under the contract, and Mil-Spec would post a security bond for the payment of the balance owed. Mil-Spec posted the bond and Pyrotechnic Specialties delivered the delay composition on November 8, 1999.

The government of Mexico notified Mil-Spec that it was assessing a ten percent penalty of $42,507.50 against Mil-Spec. Mexico later informed Mil-Spec that the delay composition it produced did not meet contract specifications because it burned too fast to be used safely. Ultimately, Mil-Spec was required to expend considerable sums to ascertain the reasons for the problem and correct it. Mil-Spec then withheld the balance of the contract price because Pyrotechnic Specialties provided goods that did not conform to the contract requirements.

Thereafter, Mil-Spec amended its complaint to add claims concerning Pyrotechnic Specialties' breach of the initial contract, attorney fees, and costs. Pyrotechnic Specialties also amended its counterclaim to add claims for breach of the second contract, attorney fees, and costs. The case was tried to a jury, and after Mil-Spec rested, Pyrotechnic Specialties moved for a directed verdict contending that by agreeing to the second contract and accepting the delivery of the

goods, without reservation, Mil-Spec waived its right to complain about any breach of the first purchase order.

The trial court granted Pyrotechnic Specialties' motion for a directed verdict on all of Mil-Spec's claims arising from the initial contract and submitted only Mil-Spec's claims on the second contract and Pyrotechnic Specialties' counterclaim to the jury. The jury awarded Pyrotechnic Specialties $60,122.71, the amount of the security bond posted by Mil-Spec.

3. Under our law, "[a] simple contract regarding the same matter and based on no new consideration does not destroy another simple contract between the same parties. . . ." OCGA § 13-4-5. Although "[a]n existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject matter embraced by the original contract, [cit.]," *Chewning v. Huebner*, 142 Ga. App. 112, 113 (235 SE2d 573) (1977), to constitute a novation four essential requisites must exist: "(1) [a] previous valid obligation, (2) the agreement of the parties to a new contract, (3) a mutual intention by the parties to substitute the new contract for the old one, and (4) the validity of the new contract." *Ga. Income Property Corp. v. Murphy*, 182 Ga. App. 101, 103 (1) (354 SE2d 859) (1987). "If any of the essential elements is lacking, there is no novation." *Beasley v. Agricredit Acceptance Corp.*, 224 Ga. App. 372, 374 (1) (480 SE2d 257) (1997). Further, whether the parties mutually intended a novation is ordinarily a question for the jury. *Feely v. First American Bank of Ga.*, 206 Ga. App. 53, 56-57 (2) (b) (424 SE2d 345) (1992).

In this case the evidence is conflicting on whether the parties intended to substitute the second contract for the first one. Nothing in the second contract indicates such an intention, see *Farris v. Pazol*, 166 Ga. App. 760, 762 (1) (305 SE2d 472) (1983), and as discussed above, the evidence is conflicting. The fact that Mil-Spec's witness referred to the second contract as a "new" contract is not dispositive; he also testified that he intended that the second contract would be separate from the first.

Pyrotechnic Specialties argues that the trial court was authorized to decide this issue as a matter of law as it concerned interpretation of a contract. See OCGA § 13-2-1. We must disagree, however, because no provision in the contracts in this case in any way addresses the issue before us.

Therefore, we cannot affirm this grant of a directed verdict, as some evidence in the record supports Mil-Spec's claims. Although a directed verdict would have been proper if Mil-Spec simply failed to prove its case, *Collins v. Ralston & Ogletree, Inc.*, 186 Ga. App. 583, 585 (367 SE2d 861) (1988), we are satisfied that the evidence, with all inferences that reasonably might be drawn, is in conflict on

whether the parties agreed to a novation and does not demand a verdict in favor of Pyrotechnic Specialties. OCGA § 9-11-50 (a); see generally *Mansour v. McWilliams*, 172 Ga. App. 377, 378-379 (1) (323 SE2d 262) (1984). Although some evidence exists that could support a verdict in favor of Pyrotechnic Specialties, a directed verdict cannot be granted on that basis. "[T]here [must be] no evidence of any kind supporting [Mil-Spec's] position." (Emphasis omitted.) *Jenkins v. Gulf States Mtg. Co.*, 138 Ga. App. 835, 837 (227 SE2d 522) (1976). Accordingly, the trial court erred by granting a directed verdict to Pyrotechnic Specialties.

4. As we have reversed the grant of the directed verdict for the reasons just stated, we must also reverse the judgment for Pyrotechnic Specialties on its counterclaim. Although a question of fact remains on whether the second contract was a novation, all the claims in this case are so closely connected and somewhat interrelated that we cannot say the jury would have reached the same result notwithstanding the claims arising from the initial contract.

*Judgment reversed. Andrews, P. J., and Adams, J., concur.*

DECIDED JUNE 25, 2003 —
RECONSIDERATION DENIED JULY 30, 2003 — ▉▉▉▉▉▉▉▉▉

*Freed & Berman, Charles H. Van Horn, Steven A. Wagner*, for appellant.

*Walker, Hulbert, Gray, Byrd & Christy, Charles W. Byrd, John D. Christy*, for appellee.