Mark A. MUNSON, Plaintiff,

v.

**STRATEGIS ASSET VALUATION AND MANAGEMENT, INC.,**
Defendant.

Civil Action File No. 1:04–CV–620–TWT.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 18, 2005.

Raymond J. Doumar, Office of Raymond J. Doumar, Augusta, GA, for Plaintiff.

Shattuck Ely, Henry D. Fellows, Jr., Thomas Kearney Wingfield, Fellows Johnson & La Briola, Atlanta, GA, for Defendant.

## ORDER

THRASH, District Judge.

This is an action for breach of contract. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 17]. For the reasons set forth below, the Court GRANTS the Defendant's motion.

## I. BACKGROUND

Plaintiff Mark A. Munson is a former employee of Defendant Strategis Asset Valuation and Management, Inc. ("Strategis"), a tax consulting company incorporated in Pennsylvania. In May 2001, Munson was hired by Strategis as a sales representative. At that time, the terms of his compensation for 2001 and 2002 were set forth in an April 26, 2001 email. (Munson Aff., Ex. A.) According to the email, Munson would receive a salary of $65,000 for 2001, and $67,500 for 2002. In addition, he would be entitled to receive commissions, based on a sliding scale of percentages, once a minimum revenue threshold was met. (Id.) Munson would not, however, receive commissions, or credit toward his commission threshold, until Strategis received fees from the clients he secured. (Id. ¶ 10.)

In early 2003, Strategis entered into discussions with an accounting and tax consulting firm, Smart & Associates, LLP ("Smart"), for the sale of the bulk of Strategis's assets. Because Strategis and Smart would be acting as a team following the asset sale, Strategis felt that it was important for its employees to become Smart employees. (Nelson–Brown Dep. at 59.) Therefore, as an employee of Strategis, Munson was offered employment with Smart. On February 7, 2003, Munson sent an email to Robert Timbo, a Strategis partner, regarding his future employment and how his commissions would be treated after the sale of Strategis to Smart. In response, Strategis sent Munson a letter agreement, dated February 11, 2003, which set forth two compensation options. Alternative I stated as follows:

> If you choose not to continue in the position of salesman, fulfilling the duties and meeting established goals at any time prior to the closing date of the sale, Strategis will pay commissions due on cash receipts received by Strategis through the termination date per the compensation plan in effect. This option is in accordance with company policy on all prior employment terminations.

(Munson Aff., Ex. F.) (emphasis added). Conversely, Alternative II stated as follows:

> Alternative II applies to client contracts signed by you. If you choose to sign an employment agreement with Smart, Strategis will pay you commissions for all cash received by Strategis, regardless of receipt date, on Accounts Receivable dated through the closing date of the sale plus cash received from Intersil based on the compensation plan currently in effect. It is our current under-

standing from Smart and their proposed employment letter that you will be compensated on cash receipts received by Smart as a result of your efforts, in accordance with the Strategis schedule as outlined in the April 26, 2001 document. This plan requires that commissions be paid *after* meeting a threshold of 5 (five) times your salary ($70,875 × 5 = $354,375) based upon your recent salary increase.

(*Id.*) (emphasis added). Munson signed the letter agreement on February 13, 2003, indicating his choice of Alternative II. (*Id.*)

Munson never signed an employment agreement with Smart. Instead, less than a week after Munson had signed the February letter agreement, Munson resigned from Strategis. Although he had signed the letter agreement, Munson indicated that his resignation was "[d]ue to the fact that Strategis and Mark Munson cannot come to an agreement upon the format of a written understanding regarding commissions owed to me by Strategis...." (Munson Aff., Ex. H.) Strategis has not paid Munson commissions for revenue received by Strategis after his resignation.

Munson alleges that Strategis's failure to pay commissions on revenue received after he resigned constitutes an actionable breach of contract. Because Strategis has indicated that it does not intend to pay commissions on any future revenue received, Munson also asserts a claim for anticipatory breach of contract. Finally, Munson asserts a claim for attorney's fees pursuant to O.C.G.A. § 13–6–11.[1] Strategis moves for summary judgment on these claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

■ Munson asserts a breach of contract claim based on Strategis's failure to pay commissions on revenue received following Munson's resignation. For example, Munson claims that he is owed commissions on an account with Intersil that he secured for Strategis. (*See* Munson Aff. ¶¶ 43–48.) The Intersil account was signed by Munson in February 2002. Strategis did not receive its fee of more than $1 million from Intersil until December 2003, after Munson's resignation. (*Id.* ¶¶ 20, 47.) Munson contends that payment of commissions following his resignation is

---

**1.** In his Original Complaint, Munson asserted a claim for attorney's fees under O.C.G.A. § 9–15–14. However, a claim brought pursuant to O.C.G.A. § 9–15–14 can only be asserted in Georgia state or superior courts. *Edwards v. Associated Bureaus, Inc.*, 128 F.R.D. 682, 683 (N.D.Ga.1989). As a result, Munson has abandoned this claim, and he moved to amend his Complaint to add a claim for attorney's fees and expenses pursuant to O.C.G.A. § 13–6–11. The Court granted the Motion to Amend on October 19, 2004. [Doc. 31]

governed by the terms of the April 2001 agreement. He argues that nothing in the agreement indicates that he would not be entitled to commissions on revenue received once he left Strategis. Thus, he asserts that Strategis was required to pay commissions, regardless of his employment status, any time that Strategis received revenue from accounts that he secured. Construction of the April contract, however, is unnecessary to the disposition of this case because the February letter agreement controls Munson's right to receive commissions following his resignation.

Munson argues that the February letter agreement cannot be applied retroactively to deny him the commissions that he had already earned. He contends that his commissions were "earned" at the time he secured an account. However, as Munson concedes, he did not receive commissions or earn credit toward his commission threshold until after Strategis received revenue from his clients. (Munson Aff. ¶ 10.) Therefore, commissions attributable to existing clients were not "earned" until Strategis received its fees. Furthermore, under Munson's construction, the terms and conditions of the February letter agreement would apply only to commissions earned from new clients secured after February 11, 2003. However, the express language of the agreement does not support this construction. Contract construction is a question of law for the court. In construing a contract, the court should first look to the four corners of the document to determine the intention of the parties from the language employed. *Livoti v. Aycock*, 263 Ga.App. 897, 901–02, 590 S.E.2d 159 (2003). Here, the language of Alternative II clearly indicates that the agreement was not limited to commissions earned from clients secured after the date of the agreement. For instance, the provision expressly references the Intersil account, an account secured in 2002. (Munson Aff., Ex. F.)

Under Georgia law, "[a] simple contract regarding the same matter and based on no new consideration does not destroy another simple contract between the same parties...." O.C.G.A. § 13–4–5. However, an existing contract will be replaced and discharged when the parties enter into a subsequent valid and inconsistent agreement that completely covers the subject matter addressed by the original contract. *Mil–Spec Industries Corp. v. Pyrotechnic Specialties, Inc.*, 262 Ga.App. 582, 585, 586 S.E.2d 7 (2003). In order for an existing contract to be superseded by a subsequent agreement, there must be proof of a valid accord and satisfaction or novation. There are four essential requirements for a novation: (1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) a mutual intention by the parties to substitute the new contract for the old one; and (4) a valid new contract. *Id.*

It is undisputed that the April 2001 email constitutes a previous valid obligation. Nor is it disputed that Munson signed and agreed to the February 11th letter agreement. (Pl.'s Resp. to Def.'s Statement of Material Facts, ¶ 16.) The question of whether the parties mutually intended for the second contract to take the place of the first is ordinarily a question of fact for the jury. *Feely v. First American Bank of Georgia, N.A.*, 206 Ga. App. 53, 56–57, 424 S.E.2d 345 (1992). However, where the intent of the parties is shown by clear, plain, and palpable evidence so that a jury can draw only one conclusion, the issue of intent can be decided as a matter of law. *Id.* at 57, 424 S.E.2d 345; *see also Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F.Supp. 1575, 1581 (N.D.Ga.1996). Here, the terms of the agreement clearly establish that the letter agreement was intended to supersede any previous em-

ployment agreement. First, the letter agreement indicates that because Munson had expressed dissatisfaction with Strategis's actions regarding the April 2001 compensation plan, Strategis was offering Munson the opportunity to select a new plan. (Munson Aff., Ex. F.) Moreover, if, as Munson contends, Strategis was already required to pay commissions on revenue received after he resigned, no action on the part of the parties was required. The very fact that Munson signed the letter agreement and indicated that he intended to pursue Alternative II shows that a substitution ending the old agreement was intended. *See Powell v. Norman Electric Galaxy, Inc.*, 229 Ga.App. 99, 102, 493 S.E.2d 205 (1997). Finally, the letter agreement completely covers the subject matter contained in the April 2001 agreement. In fact, the letter agreement contains a more detailed discussion of Munson's entitlement to commissions than does the original agreement which only set forth the threshold and percentage schedules. (*Id.;* Munson Aff., Ex. A.) Therefore, the Court finds as a matter of law that the parties intended the letter agreement to supersede the previous employment agreement.

■■ Munson also argues that the February letter agreement is not supported by consideration, and is therefore not a valid contract, because Strategis was already obligated to pay him commissions on revenue secured but not yet received by Strategis. (*See* Munson Aff. ¶ 25.) Even assuming that Strategis was so obligated, the letter agreement is supported by good and valuable consideration. Under Georgia law, a return promise is good consideration as long as it is not a promise to do what one was already legally bound to do. *See Franklin v. UAP/GA. AG. Chem., Inc.*, 237 Ga.App. 71, 74, 514 S.E.2d 241 (1999) ("Where mutual promises are given, each promise is itself consideration for the return promise."). The letter agreement states that, if Munson accepts employment with Smart, Strategis promises to pro-rate his commission threshold for 2003, something Strategis was not legally required to do. (*Id.*, Ex. F.) Thus, the February letter agreement is a valid contract, and meets all of the elements necessary to constitute a novation of the April 2001 agreement.

■■ The February letter agreement represented an offer to alter the terms of Munson's compensation. This offer presented Munson with two alternatives: resign his position as salesman or continue his employment by signing an employment agreement with Smart. Munson's choice of options would dictate how his future commissions would be paid. Munson accepted the offer contained in the letter agreement and indicated his intention to pursue Alternative II and sign an employment agreement. However, after accepting the terms of the letter agreement, Munson failed to fulfill the condition precedent contained in Alternative II. In the absence of an indication to the contrary, words such as "provided," "if," and "on condition that" in a contract create a condition precedent. *McDuffie v. Criterion Cas. Co.*, 214 Ga.App. 818, 821, 449 S.E.2d 133 (1994). Thus, the requirement that Munson sign an employment agreement with Smart was a condition precedent to continued receipt of commissions from Strategis. It is undisputed that Munson never signed an employment agreement with Smart. Instead, he chose to follow the path set forth in Alternative I by resigning from Strategis. By failing to fulfill the condition precedent in Alternative II, Munson lost his right to receive commissions on cash received by Strategis following his resignation.

■ Munson argues that such a construction results in a forfeiture. Although the law does not favor forfeitures generally, they are not unlawful or completely prohibited. *Fernandes v. Manugistics At-*

*lanta, Inc.,* 261 Ga.App. 429, 434, 582 S.E.2d 499 (2003). "[W]here a contract in unmistakable terms provides for a forfeiture, neither a court of law nor a court of equity will relieve against the forfeiture." *Id.* The language of Alternative II is not ambiguous. It expressly provides for forfeiture of commissions if an employment contract with Smart is not signed. Thus, summary judgment for Strategis on Munson's breach of contract and anticipatory breach of contract claims is proper.

 Finally, Munson asserts a claim for attorney's fees under O.C.G.A. § 13–6–11. Section 13–6–11 allows a plaintiff to recover the expenses of litigation when the defendant "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."

Because Munson has not prevailed on his substantive claims, his claim for attorney's fees fails as well. *United Companies Lending Corp. v. Peacock,* 267 Ga. 145, 147, 475 S.E.2d 601 (1996) ("A prerequisite to any award of attorney fees under O.CThrash.G.A. § 13–6–11 is the award of damages or other relief on the underlying ·claim."). Thus, Strategis is entitled to summary judgment.

## IV. *CONCLUSION*

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 17] is GRANTED.