A06A0567, A06A0568. PARK et al. v. FORTUNE PARTNER, INC. et al.; and vice versa.

(630 SE2d 871)

ELLINGTON, Judge.

Fortune Partner, Inc. and Pu Cheng Chang (the "plaintiffs") sued Chong Nam Park, Steven Cynn, Sun Hee Chung (the "defendants"), and PCK Vision, Inc. to recover on three promissory notes. Following a bench trial, the trial court found that the defendants had no defense to the $299,113.45 note obligation. The trial court, however, offset the defendants' obligation by $200,000 because of plaintiff Chang's unclean hands, and entered judgment in favor of Fortune and against the defendants, jointly and severally, for $99,113.45. On appeal, the defendants claim the trial court erred in entering judgment against them because the plaintiffs had agreed to a novation of the notes and had breached the underlying sales contract, among other things. We disagree. In their cross-appeal, the plaintiffs claim the trial court erred in reducing the amount payable under the notes on account of plaintiff Chang's unclean hands. We agree. Accordingly, we affirm in part and reverse in part.

"The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error standard of review applies where the appellate court determines that the issue was of law, not fact." (Punctuation and footnotes omitted.) *Page v. Braddy*, 255 Ga. App. 124, 126 (564 SE2d 538) (2002).

Viewed in a light most favorable to the trial court's findings, the evidence showed the following. On November 7, 1997, Fortune, a corporation owned by plaintiff Chang and his wife, contracted to sell

the "Valu Cleaners" dry cleaning business, including the equipment, trade name, and assets, to the defendants for $420,000. The defendants paid $120,000 in cash and delivered three promissory notes payable to Fortune in the principal amounts of $181,014.14, $49,985.86, and $70,000. The defendants subsequently formed PCK Vision, Inc., to which they transferred their interest in the business. The defendants and PCK operated Valu Cleaners from November 7, 1997, until December 30, 2000, when PCK sold the business to a third party for $240,000. The defendants made payments on one of the promissory notes through November 1998 and another through June 1998, but made no more payments on the notes. They also made no payments on the third note, which provided for scheduled payments to begin on July 7, 2001.

*Case No. A06A0567*

In a suit on a promissory note "[i]f the validity of signatures is admitted or proved and there is compliance with [OCGA § 11-3-308 (a)], a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under Code Section 11-3-301, unless the defendant proves a defense or claim in recoupment." OCGA § 11-3-308 (b). There is no dispute that the notes are authentic, that the individual defendants signed the notes, that Fortune is the holder, or as to the trial court's computation of the amount due on the notes.

1. The defendants claim the trial court erred in failing to find that a novation of the promissory notes and underlying sales contract released them from their note obligations. We disagree.

> [T]o constitute a novation four essential requisites must exist: (1) a previous valid obligation, (2) the agreement of the parties to a new contract, (3) a mutual intention by the parties to substitute the new contract for the old one, and (4) the validity of the new contract. If any of the essential elements is lacking, there is no novation. Further, whether the parties mutually intended a novation is ordinarily a question for the jury.

(Citations and punctuation omitted.) *Mil-Spec Indus. Corp. v. Pyrotechnic Specialties*, 262 Ga. App. 582, 585 (3) (586 SE2d 7) (2003).

The evidence showed that when Fortune and the defendants entered into the sales contract, plaintiff Chang owed Valu Cleaners' previous owner $181,014.14 on a promissory note. The sales contract disclosed this obligation as a note "creating a security interest in the Business." Plaintiff Chang later realized that Valu Cleaners' sale

violated his agreement with the previous owner, who was therefore entitled to demand payment in full.

With the intent of avoiding an acceleration of plaintiff Chang's indebtedness to the previous owner, Fortune and defendant Chung's husband, Doo Jeong Kim, signed a "Contract for Management" in December 1997, predated to November 3, 1997. The management contract provided that Kim would manage Valu Cleaners for an initial one-year term while Kim sought an SBA-guaranteed loan to purchase the business and the associated building, and that the agreement could be extended for two additional one-year terms if Kim failed to secure the loan. The management contract also provided that Kim would pay $120,000 in earnest money to be held in escrow until applied to the purchase price of the business. At the insistence of the previous owner, the management contract was amended on December 22, 1997, to reflect that Chang was still the owner and Fortune was acting as the administrator of Valu Cleaners. However, no SBA-guaranteed loan was ever secured, $120,000 was not placed into escrow, and, for some time after the management contract was executed, the defendants made payments on the notes.

The trial court found that the management contract was a sham intended to satisfy the previous owner that a new manager and not a new owner was operating Valu Cleaners. The trial court further determined that there was no novation because the parties did not mutually intend to substitute the management contract for the sales contract and because no consideration was given for the management contract. As this finding is not clearly erroneous, it may not be set aside on appeal. See OCGA § 9-11-52; *Tampa Bay Financial v. Nordeen*, 272 Ga. App. 529, 531 (1) (612 SE2d 856) (2005) ("appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them") (citation omitted). Accordingly, the trial court did not err in failing to find that novation was a meritorious defense to the suit on the notes. See *Peters v. Thomason*, 157 Ga. App. 513, 514 (1) (277 SE2d 798) (1981) (plaintiffs established prima facie case to recover on promissory notes, and evidence presented in support of the defenses to payment on the notes did not demand a defense verdict).

2. The defendants also claim the trial court erred in its judgment because plaintiff Fortune failed to convey title to the business's assets and failed to transfer the lease to the premises in which the business was operating, as agreed under the sales contract. We disagree.

(a) In their answer and at trial, the defendants contended that the promissory notes failed for lack of consideration. "Any presumption that a promissory note in the hands of the original payee is supported by consideration is subject to rebuttal." *Ochs v. Hoerner*, 235 Ga. App. 735, 736 (510 SE2d 107) (1998). Specifically, the

defendants argued that plaintiff Chang and not Fortune owned Valu Cleaners, and that Fortune could not have sold the business which was the underlying consideration for the notes.

The trial court's order refers to both Fortune and Chang as having sold the business, but the trial court was entitled to conclude that the defendants had not presented a meritorious defense to payment on the promissory notes in either case. At trial, plaintiff Chang testified that he intended to buy the business from its previous owner in Fortune's name and asked the business broker, who he was dealing with, to place title with Fortune. Thus, the trial court was entitled to conclude that the promissory notes did not fail for lack of consideration because Fortune had title to the business when it entered into the sales contract.

Alternatively, the trial court was entitled to conclude that the defendants waived a claim based on lack of consideration. Evidence showed, and the trial court found, that the defendants and their wholly owned corporation, PCK, exercised authority over Valu Cleaners, generated profits, and then, claiming title, sold the business to a third party for a substantial sum. The defendants knew about the amendment to the management contract and its provision stating that Chang owned Valu Cleaners, but continued to make payments on the notes, and only ceased payment, as defendant Park acknowledged, because "the business was slowing down." Accordingly, the defendants chose to waive any possible defects in title. "Acting on the theory that the contract is still in force, as by continuing performance, demanding or urging further performance, or permitting the other party to perform and accepting or retaining benefits under the contract, may constitute waiver of a breach." (Citation and punctuation omitted.) *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989).

(b) The defendants also argue that they were excused from their obligations under the notes because Fortune failed to transfer the lease under which the business was operating, thereby breaching the sales contract.[1] The sales contract provided that "[Fortune] shall maintain control of the current lease on the intent of [defendants] to purchase the property from [the landlord]." Fortune also promised to transfer and assign the lease, subject to the landlord's approval.

---

[1] The defendants characterize Fortune's alleged breach of the sales contract as a "defense" to payment on the note, but the alleged breach may be more accurately asserted as the basis for a claim of recoupment or counterclaim. See *McIntosh v. McLendon*, 162 Ga. App. 220, 221 (2) (290 SE2d 157) (1982) (alleged breach of agreement entered into in the transaction giving rise to the note was not a defense to payment of the note, but might support a counterclaim for breach of contract). But compare *Lowery v. Dallis*, 237 Ga. App. 309, 311 (2) (513 SE2d 740) (1999) (treating alleged breach of sale of business contract as a defense to suit on related note).

However, plaintiff Chang and not Fortune was the named lessee, and consequently Fortune could not maintain the lease or assign it. The trial court recognized this, but concluded it did not constitute a defense to payment on the notes.

Viewed favorably to the trial court's findings, the evidence showed that plaintiff Chang did what Fortune promised to do. He stayed "in control" of the lease by remaining the named lessee and interacting with the initial and successor landlord in that capacity. According to plaintiff Chang, he did not pursue a transfer of the lease to the defendants because the defendants intended to buy the leased property from the landlord. The defendants, however, never followed through on the purchase. When the defendants decided not to buy the landlord's property they asked plaintiff Chang to assign the lease, but the landlord did not agree to an assignment. Given this evidence, the defendants either knew or in the exercise of reasonable diligence should have known that plaintiff Chang, and not Fortune, was the named lessee, but were content to accept performance by plaintiff Chang. Accordingly, the trial court was entitled to conclude that defendants waived the right to enforce Fortune's promises as to the assignment of the lease. See *Kusuma*, supra, 191 Ga. App. at 257 (3) (a contract provision "may be waived by the conduct of both parties intended to result in the 'mutual disregard' of, or 'mutual departure' from the contract terms. See generally OCGA § 13-4-4.") (citations and emphasis omitted). We find no error.

3. The defendants claim that the trial court erred by failing to award them damages and costs for fraud. We disagree. A fraud counterclaim was neither raised nor litigated. It follows that the defendants cannot raise this claim for the first time on appeal. See, e.g., *Fisher v. Marvin Reese Cos.*, 231 Ga. App. 487 (1) (499 SE2d 411) (1998) (as issue of whether noncompete agreement was an unreasonable restraint of trade was not raised at trial, the appellant could not raise the issue on appeal).

4. The defendants further contend that the trial court erred by failing to award damages on their counterclaim for recoupment. "Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the contract upon which suit is brought." OCGA § 13-7-2. "Recoupment lies for overpayments by the defendant or for payments by fraud, accident, or mistake." OCGA § 13-7-12.

The defendants contend that they are entitled to the return of $120,000 paid to Fortune as the down payment under the sales contract or as earnest money under the management contract, and an additional $30,000 for monies paid outside these agreements. With

respect to the management contract, the trial court found the agreement to be a sham, and evidence shows that no money was paid thereunder. With respect to the sales contract, the defendants paid $120,000 at closing per that agreement. The defendants also tendered an additional $30,000, which plaintiff Chang testified was made in return for "services," including the assistance of a previous manager. These payments were voluntarily made, and the evidence does not demand a finding of an overpayment or payment on account of fraud, accident, or mistake. *Wallis v. B & A Constr. Co.*, 273 Ga. App. 68, 73 (2) (614 SE2d 193) (2005) ("under Georgia law, money voluntarily paid may not ordinarily be recovered") (punctuation and footnote omitted).[2] Accordingly, the trial court was authorized to conclude that the defendants were not entitled to recover on their recoupment claim. We find no error.

5. The defendants contend that the trial court erred in granting judgment to the plaintiffs after finding that they had unclean hands. However, as we conclude in Division 6 below, the doctrine of unclean hands was not applicable here. Therefore, this argument provides no grounds for relief from the judgment.

### Case No. A06A0568

6. The trial court found that plaintiff Chang had "unclean hands" in selling the business without obtaining the permission of the previous owner or the lessee, and for this reason reduced the defendants' obligation by $200,000. In Case No. A06A0568, the plaintiffs contend that the trial court erred in applying the doctrine of unclean hands to reduce the amount of the judgment. We agree.

The doctrine of unclean hands is a well-established principle. "He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." OCGA § 23-1-10. "The unclean-hands maxim which bars a complainant in equity from obtaining relief has reference to an inequity which infects the cause of action so that to entertain it would be violative of conscience." (Citations and punctuation omitted.)

---

[2] The defendants also claim they were entitled to recover $70,000 from the plaintiffs for moneys which defendants spent on maintaining the business's equipment. We fail to see how the plaintiffs were responsible for these costs after the business was sold, absent a rescission of the sales contract. However, assuming a rescission claim was before the trial court, the trial court was not required to recognize a rescission because the defendants, through PCK, sold the business while claiming title, among other actions inconsistent with a repudiation of the sales contract. See, e.g., *Meadow River Lumber Co. v. Univ. of Ga. Research Foundation*, 233 Ga. App. 169, 176 (2) (503 SE2d 655) (1998) ("[w]here a party who is entitled to rescind a contract on ground of fraud or false representations . . . acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence") (punctuation and footnote omitted).

*Partain v. Maddox*, 227 Ga. 623, 637 (4) (182 SE2d 450) (1971). However, the plaintiffs here were asserting a legal remedy and they were not " 'complainant[s] in equity.' " Id. "The equitable doctrine of unclean hands . . . has no application to an action at law." (Footnote omitted.) *Holmes v. Henderson*, 274 Ga. 8, 8-9 (1) (549 SE2d 81) (2001). Accordingly, the trial court was not authorized to reduce the amounts shown to be due and payable on the promissory notes on account of its finding that Chang had unclean hands. See *Gerschick v. Pounds*, 262 Ga. App. 554, 558 (3) (586 SE2d 22) (2003) (unclean hands is not a defense to the legal right of contribution); *Zappa v. Automotive &c. Machinery*, 205 Ga. App. 584 (2) (423 SE2d 286) (1992) ("the doctrine of clean hands, OCGA § 23-1-10, applies only to equitable rights related directly to the cause of action") (citations omitted). Accordingly, on remand, the trial court is directed to enter judgment for Fortune and against Parks, Cynn, and Chung, jointly and severally, in the amount of $299,113.45.

7. The plaintiffs also contend that the trial court erred in failing to award judgment against PCK as a fraudulent transferee of the dry cleaning business. See OCGA § 18-2-74 (a); *Miller v. Lomax*, 266 Ga. App. 93, 96-97 (2) (b) (596 SE2d 232) (2004). However, the plaintiffs do not point to any evidence, aside from the mere occurrence of the transaction, showing that the individual defendants transferred the business to their wholly owned corporation with the intent to hinder, delay, or defraud creditors. OCGA § 18-2-74 (a) (1). Nor did they show that the individual defendants were engaged in a transaction for which their remaining assets were unreasonably small or intended to incur debts beyond their ability to pay as they became due. OCGA § 18-2-74 (a) (2). Accordingly, the trial court did not err in failing to find that PCK was liable as a fraudulent transferee.

8. In view of the foregoing, the plaintiffs' remaining enumerations of error are moot.

*Judgment affirmed in part, reversed in part and case remanded with direction. Johnson, P. J., and Miller, J., concur.*

DECIDED MAY 9, 2006 — ▮▮▮▮▮▮▮▮▮

*Fox, Chandler, Homans, Hicks & McKinnon, Graham McKinnon, IV*, for appellants.

*Mitchell S. Rosen*, for appellees.