STUART, Justice.
Walter Energy, Inc., appeals the order of the Jefferson Circuit Court dismissing claims it had asserted against investor Julian A. Treger, his firm Áudley Capital Advisors LLP, and other associated investment entities (hereinafter referred to col *823 lectively as “the Audley defendants”[1]) stemming from their alleged involvement in a scheme to improperly manipulate the share price of Walter Energy stock. We affirm.
I.
In late 2010, Birmingham-based Walter Energy agreed to purchase Western Coal Corporation, a Canadian energy company in which the Audley defendants held a significant minority stake. Between then and April 1, 2011, when the acquisition closed, the Audley defendants exchanged millions of shares of Western Coal stock for approximately $770 million in cash arid Walter Energy stock. Walter Energy asserts that the Audley defendants thereafter conspired to execute a “pump and dump” scheme to drive up the price of Walter Energy stock and to further profit from Walter Energy’s purchase of Western Coal.[2]
Walter Energy alleges that the Audley defendants initiated their scheme on July 17, 2011, when Treger sent .a letter to Walter Energy stating that Audley Capital Advisors had directed an investment bank to gauge various third parties’ interest in acquiring Walter Energy and intimating that Walter Energy could be sold at double its then current share price. The letter also advised that other large institutional shareholders in Walter Energy had been contacted and that they would support an acquisition of the company at the appropriate price. The letter, marked “private & confidential,” requested a response from Walter Energy by August 5, 2011; however, Audley Capital Advisors publicly released the letter on July 18, 2011,- before receiving any response from Walter Energy.
The share price of Walter Energy stock, which trades publicly on the New York Stock Exchange, thereafter spiked, and, in the days and weeks that followed, the Aud-ley defendants sold approximately 900,000 shares of Walter Energy stock. In September 2011, The Times, a London newspaper, reported that another mining company was considering making an offer to purchase Walter Energy and that it had in fact already arranged financing to do so. Shares of Walter Energy again spiked, and the Audley defendants sotó approximately 300,000 more shares of Walter Energy stock that month. In Octqber 2011, there were more media reports that various mining and energy companies were targeting Walter Energy for a takeover, and the Audley defendants sold approximately 200,000 shares of Walter Energy stock that month. Firially, in December 2012, the Daily Mail in London reported that an Australian mining company was poised to make an offer to acquire Walter Energy.
To date, however, no company has made a formal bid to acquire Walter Energy or *824 has attempted any other sort of a takeover. Walter Energy now asserts that all the media reports indicating that an acquisition of Walter Energy was imminent were false and that they were generated by the Audley defendants in an attempt to create interest in Walter Energy stock so the share price would rise and the Audley defendants could sell their shares of Walter Energy stock at the new artificially high price.
Walter Energy further argues that the Audley defendants perpetuated the idea that the board of directors of Walter Enerr gy was declining merger opportunities based on the directors’ own self interest. On March 22, 2013, the Audley defendants gave notice that they would present,their own slate of directors at the April 25, 2013, annual meeting of Walter Energy shareholders by filing the required information with the Securities and Exchange Commission and distributing a letter tp all Walter Energy shareholders seeking support for their proposed slate of directors. However, Walter Energy alleges that, in fact, the intent of the March 22 letter was to hinder Walter Energy’s attempt to raise $350 million by way of a debt offering. Although neither the Audley defendants’ proposed slate of candidates nor the attempt to stop the debt offering, was ultimately successful, Walter Energy alleges that both efforts were part of a continued effort to manipulate the share price of Walter Energy stock.
In May 28, 2013, Walter Energy sued the Audley defendants in the Jefferson Circuit Court seeking damages based upon their alleged improper manipulation of the share price of Walter Energy stock, as well as an injunction barring any further attempts to do so.[3] As eventually amended, Walter Energy’s complaint alleged violations of the Alabama Securities Act, § 8-6-1 et seq., Ala.Code 1975; various species of fraud; felonious injury; conspiracy; intentional interference with contractual or business relations; negligent misrepresentation; and unjust enrichment. Following the filing of Walter Energy’s initial complaint, and again following thé filing of three amended complaints, the Audley defendants moved the trial court to dismiss ah the claims asserted against them on Rule 12(b)(6), Ala. R. Civ. P., grounds. On May 20, 2014; the trial court granted the Audley defendants’ motion to dismiss and dismissed with prejudice all the claims asserted against them by Walter Energy. On June 30, 2014, Walter Energy filed its notice of appeal to this Court.
II.
We explained the standard of review applicable to an appeal of a trial court’s order granting a motion to dismiss in Crosslin v. Health Care Authority of Huntsville, 5 So.3d 1193, 1195 (Ala.2008):
“In considering whether a complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6), Alá. R. Civ. P., a court ‘must accept the allegations of the complaint as true.’ Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002) (emphasis omitted). “‘The appropriate standard of review under Rule 12(b)(6)[, *825 Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor,- it appears that the pleader could prove any set of circumstances that would entitle [it] to relief.” ’ Smith v. National Sec. Ins. Co., 860 So.2d 343, 345 (Ala. 2003) (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)). In determining whether this is true, a court considers only whether the plaintiff may possibly prevail, not whether the plaintiff will ultimately prevail. Id. Put another way, ‘“a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the .claim that would entitle the plaintiff to relief.’” Id. (emphasis added).”
Thus, we afford the trial court’s order of dismissal no presumption of correctness, ■and we -review the sufficiency of Walter Energy’s complaint de novo. See also DGB, LLC v. Hinds, 55 So.3d 218, 223 (Ala.2010) (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)) (“ ‘On, appeal, a dismissal is not entitled to a presumption of correctness.’ ”).
Although the trial court dismissed all the claims Walter Energy had asserted against the Audley defendants, Walter Energy challenges only the trial court’s dismissal of its Alabama Securities Act claim and its intentional-interference-with-contractual-or-business-relations claim, arguing that those claims were adequately pleaded and not due to be dismissed under Rule 12(b)(6). We first consider Walter Energy’s claim that the Audley defendants violated the Alabama Securities Act..
III.
Walter Energy specifically argues that the Audley defendants violated § 8-6-17(a), Ala.Code 1975, a provision of the Alabama Securities Act, which provides:
“It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to:
“(1) Employ any device, scheme,' or artifice to defraud;
“(2) Make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstancés under which they áre made, not misleading; or
“(3) Engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.”
The facts as alleged by Walter Energy in its third and final amended complaint, which we must accept as true at this stage of the proceedings, do indicate that the Audley defendants engaged in conduct that appears to fall within the list of activities prohibited by. § 8-6-17(a). Indeed, although it appears that the Audley defendants will dispute whether they actually engaged in such conduct at a later time if the need to do so arises, their arguments in support of the trial court’s order of dismissal do not include an argument that their alleged conduct, if proven, would not constitute conduct prohibited by the terms of § 8-6-17(a).
Rather, the Audley defendants argue that § 8-6-17(a) does not apply to any of their activities in connection with the sale of Walter Energy stock because, they argue, § 8-6-12(a), Ala.Code 1975, provides that the Alabama Securities Act applies only “to persons who sell or offer to sell [securities] when (1) an offer to sell is made in this state, or (2) an offer to buy is made and accepted in this state.” Subsection '8-6-12(c) further provides that “[a]n offer to ’sell or to buy is made in this state, whether or not either party is then present in this state, when the offer (1) originates from this state, or (2) is directed by the *826 offeror to this state and received at the place to which it is directed.” There has been no allegation that there was an offer to buy in this case, and the Audley defendants argue that they have never made any offer to sell Walter Energy stock in Alabama.[4] More importantly at this stage of the proceedings, the Audley defendants argue that Walter Energy has failed even to allege that any offer to sell was made in Alabama. The Audley defendants argue that Walter Energy’s failure to allege that the Audley defendants made an offer to sell Walter Energy stock in Alabama requires the dismissal of the § 8-6-17(a) claim in the trial court and is now a sufficient'basis for this Court to affirm that dismissal.
In its third amended complaint, Walter Energy never directly alleges that the Audley defendants made an offer to. sell anything in Alabama. However, Walter Energy does state four times, in paragraphs 45, 55, 59, and 120 of the complaint, that the Audley defendants’ sales of Walter Energy stock “occurred on the New York Stock Exchange, and the offers to sell were directed to Alabama.” An allegation that an offer to sell securities was directed to Alabama can be sufficient to constitute an allegation that an offer to sell was made in Alabama for purposes of the Alabama Securities Act ■¿/'that allegation is accompanied by an allegation that the offer to sell was also received in Alabama. See § 8-6-12(c) (“An offer to sell ... is made in this state ... when the offer ... is directed by the offeror to this state and received at the place to which it is directed.... ” (emphasis added)). However, Walter Energy has failed to make any allegation regarding the receipt of an offer in Alabama. For this reason, the trial court dismissed Walter Energy’s Alabama Securities Act claim, stating:
“[Section] 8-6-17 does not apply because Walter Energy has not alleged that the Audley defendants sold Walter Energy stock in Alabama, see § 8-6-12(a) stating that Article I of the [Alabama Securities] Act, which includes § 8-6-17, applies only ‘to persons who sell or offer to sell when ... an offer to sell is made in this state’, or that the Audley defendants directed an offer to sell Walter Energy stock to Alabama that was received ‘at the place to which it [was] directed,’ see § 8-6-12(c) (‘An offer to sell ... is made in this state ... when the offer (1) originates from this state, or (2) is directed by the offeror to this state and received at the place to which it is directed or at any post office in this state....’).
“Walter Energy seeks to overcome these requirements by alleging that the Audley defendants’ sales of Walter Energy stock ‘occurred on the New York Stock Exchange, and the offers to sell were directed to Alabama.’ This allegation concerning transactions on the New York Stock Exchange is a legal conclusion, not a factual allegation. In any event, even assuming that this allegation is effectual, Walter Energy still has not alleged that any offer was actually received in Alabama ‘at the place to which it [was] directed.’ See § 8-6-12(c). As a result, no matter how it is construed, Walter Energy’s claim under the [Alabama] Securities Act fails to satisfy the *827 two-pronged requirement of § 8-6-17 that the offers be both (1) directed to persons located in Alabama and (2) received by the persons located in Alabama to which the offers were directed.”
We agree with the conclusion of the trial court and similarly hold that Walter Energy has failed to plead a claim for which relief can be granted under the Alabama Securities Act. We further note that the argument Walter Energy is essentially making — that every transaction that occurs on the New York Stock Exchange or, presumably, any other national securities exchange, is within the scope of the Alabama Securities Act — has not previously been accepted by this Court, and Walter Energy has cited no cases from other jurisdictions that have adopted a version of the Uniform Securities Act in which a state securities act has been read so expansively. To the contrary, it has been noted that the drafters of the Uniform Securities Act intended for it to.have a limited scope. See Lintz v. Carey Manor Ltd., 613 F.Supp. 543, 550 (W.D.Va.1986) (quoting Joseph C. Long, Blue Sky Law Handbook § 3-6 (1986)) (“ e[I]t is clear that the draftsmen of the Uniform [Securities] Act consciously elected to limit the scope of the Uniform [Securities] Act to those transactions which took part at least partially within the state.’ ”).[5]
Moreover, we also note that the mere fact that the transactions in .question involve the stock of an Alabama-based eor-poration is an insufficient basis upon which to apply the Alabama Securities Act. As one leading commentator on state securities laws has explained:
“A major question under the blue sky laws of most states involves their jurisdictional provisions. The statutes generally are directed at the locus where the securities are offered for sale, regardless of the issuer’s state of incorporation, state of organization, or principal place of business.”
2 Thomas L. Hazen, Treatise on the Law of Securities Regulation § 8.1[1][F] (6th ed-2005) (footnote omitted). Because the Alabama Securities Act claim made by Walter Energy in its third amended complaint does not allege that the Audley defendants made. an offer to sell Walter Energy stock in Alabama or, in the alternative, that this case involves an offer to buy Walter Energy stock that was made and accepted in Alabama, an essential element of an Alabama Securities Act claim, the trial court’s dismissal of that claim is due to be affirmed.[6] See Belcher v. Jefferson Cnty. Bd. of Educ., 474 So.2d 1063, 1068 (Ala.1985) (affirming the dismissal of a claim where “the appellants did not sufficiently allege the requisite elements”), and Lloyd v. Community Hosp. of Andalusia, Inc., 421 So.2d. 112, 113 (Ala.1982) (“[W]hen the complaint is devoid of averments of the requisite elements of any legal claim upon which *828 plaintiff might be entitled to relief, the motion is to be granted.”)!
IV.
We next consider the trial court’s dismissal of Walter Energy’s claim of intentional interference with contractual or business relations. In fact, this appears to be a two-part claim because Walter Energy alleges that the Audley defendants improperly interfered with (1) its relationship with its other shareholders and (2) its relationship with lenders inasmuch as the Aud-ley defendants’ March 22 letter announcing that they would be sponsoring a new slate of directors at the upcoming shareholders meeting was allegedly timed to interfere with Walter Energy’s plans announced that same day to complete a $350 million debt offering.[7] In White Sands Group, L.L.C. v. PRS II, LLC, 32 So.3d 5, 14 (Ala.2009), this Court restated the elements of a claim of intentional interference with contractual or business relations, explaining that, “properly stated, the elements of the tort are (1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage.” This appeal hinges on the third element — Walter Energy asserts that the Audley defendants were strangers to its relationships with its other shareholders and lenders, while the'Audley defendants argue that the undisputed facts conclusively establish that they were not strangers to those relationships. For the reasons that follow, we agree with the Audley defendants.
The seminal- ease discussing the “stranger” requirement "of an intentional-interference-with-contractual-or-business-relations claim is Waddell & Reed, Inc. v. United Investors Life Insurance Co., 875 So.2d 1143 (Ala.2003). After noting that a party to a contract or business relationship clearly cannot be liable for tortious interference with that -relationship, this Court in Waddell & Reed explained that a defendant need not be a signatory to the subject contract or one of the primary actors in the business relationship to effectively be a party to it, but that “[a] defendant is a party in interest to a relationship if the-defendant has any beneficial or economic interest in, or control over, -that relationship.” 875 So.2d at 1154. The Court relied on cases applying Georgia law to articulate its position:
“We also find support in ... LaSonde v. Chase Mortgage Co., 259 Ga.App. 772, 577 S.E.2d 822 (2003), in which the Court of Appeals of Georgia stated:
“ ‘In order to be liable for interference with a contract, a defendant must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract. One is not a stranger to the contract just because he is not a party to the contract. A tortious interference claim requires, among other things, wrongful conduct by the defendant without privilege; ‘ “privilege” means legitimate economic interests of the defendant or a legitimate relationship of the defendant to the contract, so that he is not considered a stranger, interloper, or meddler. A *829 person vñth a direct economic interest in the contract is not a stranger to the contract. Parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships’
“259 Ga.App. at [773], 577 S.E.2d at 824 (emphasis added; footnotes omitted).”
Waddell & Reed, 875 So.2d at 1157. See also Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc., 952 F.Supp. 1575, 1584 (N.D.Ga.1996) (“[A] defendant is not a ‘stranger’ to a contract or business relationship when: (1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant’s contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations.”). Ultimately, the Waddell & Reed Court summarized its analysis of the stranger requirement as follows:
“For the sake'of clarity, we adopt the term ‘participant’ to describe an individual or entity who is not a party, but who is essential, to the allegedly injured relationship and who cannot be described as a stranger. One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract. In such an instance, the participant is not a stranger to the business relationship and the interwoven contractual arrangements define the participant’s rights and duties with respect to the other individuals or entities in the relationship. If a participant has a legitimate economic interest in and a legitimate relationship to the contract, then the participant enjoys a privilege of becoming involved without being accused of interfering with.the contract.”
875 So.2d at 1157.
In applying Waddell & Reed to this case, the trial court concluded that the Audley defendants had sufficient interests in the relationships in which they are alleged to have interfered to render them participants in those relationships, stating:
“As shareholders of Walter Energy, the Audley defendants had direct beneficial and economic interests in Walter Energy’s business and its relationships with its other shareholders and its lenders. The Audley defendants had the right to participate in Walter Energy’s affairs by engaging in the 2013 . proxy contest and to ■ influence the business decisions made by Walter Energy’s directors -and management, even to challenge those decisions privately and publicly. The Audley defendants are not ‘strangers’ to Walter.Energy’s relationships with its shareholders and lenders and cannot be liable for intentional interference with business and contractual relations.”
We agree. A decision made by a corporation’s board of directors to issue debt securities is presumably made in the best interest of the corporation’s shareholders, and any gain or loss resulting from such a business decision will ultimately be ■ for' those shareholders’ benefit or to their detriment. See, e.g., Massey v. Disc Mfg., Inc., 601 So.2d 449, 457 (Ala.1992) (explaining that corporate directors have a fiduciary duty to act in the best interests of the corporation and its shareholders). Thus, as relates to the facts alleged in this case, the Audley defendants,’ as shareholders in Walter Energy, have a direct interest in any business relationships Walter Energy *830 has with its lenders; accordingly, they are not strangers to those relationships.
Similarly, the shareholders of a corporation literally share ownership of the corporation with each other, and their economic interests are necessarily interwoven. Every shareholder has the same rights and privileges, and the corporation’s board of directors and officers owe all the shareholders the same fiduciary duties. How any specific shareholder votes on corporate matters, such as the election of directors, amendment of bylaws, or approval of significant mergers and acquisitions, necessarily affects the other shareholders, and even a shareholder’s decision to buy, hold, or sell stock can affect other shareholders inasmuch as trading activity affects share price and the actions of management. Thus, each shareholder has a beneficial or economic interest in its fellow shareholders’ relationship with the corporation they jointly own. Those relationships are necessarily interwoven, and we conclude that the Audley defendants are participants in the relationships with which they are alleged to have interfered and that the stranger requirement cannot be met. Accordingly, the trial court correctly dismissed Walter Energy’s intentional-interference-with-contractual-or-business-re-lations claim.
V.
Walter Energy sued the Audley defendants alleging various claims stemming from their alleged involvement in a “pump and dump” scheme to manipulate the share price of Walter Energy stock. After affording Walter Energy three opportunities to amend its complaint, the trial court dismissed all the claims on Rule 12(b)(6) grounds. Walter Energy thereafter appealed the dismissal of two of its claims to this Court; however, upon review, we conclude that the dismissal of those claims was proper, and the judgment of the trial court is accordingly affirmed.
AFFIRMED.
MOORE, C.J., and PARKER, SHAW, and WISE, JJ., concur.

. Besides Treger and Audley Capital Advisors, the Audley defendants also include Audley European Opportunities Master Fund Limited, Audley Natural Resources Master Fund, Audley Capital Management Limited, and Audley Investment Management Limited. Treger and Audley Capital Advisors are based in London, England; the other entities are based in Guernsey and the Cayman Islands.

. The -United States Court of Appeals for the Eleventh Circuit has succinctly described a pump and dump scheme as follows;
"A pump and dump scheme involves artificially inflating the price and volume of an owned stock — by promotional ■ or trading activity — to sell the stock at a higher price. Once the overvalued shares are dumped, the price and volume of shares plummet and unsuspecting investors lose their money.’’
United States v. Curshen, 567 Fed.App’x 815, 816 (11th Cir.2014) (not selected for publication in the Federal Reporter).

. Walter Energy also named as defendants Scoggin Capital Management, LLC, and related entities ("the Scoggin defendants”) that Walter Energy alleged had made an investment in Walter Energy ,to assist the Audley defendants in their attempt to replace the board of directors of Walter Energy and that had entered into an agreement with the Aud-ley defendants to give them a percentage of any profit the Scoggin defendants ultimately made on their investment in Walter Energy. However, the Scoggin defendants’ motion to dismiss for lack of personal jurisdiction was eventually granted by the trial court, and Walter Energy has not appealed their dismissal.

. We note that the petitioner in Ex parte Kohlberg Kravis Roberts & Co., L.P., 78 So.3d 959, 977-79 (Ala.2011), similarly argued that the Alabama Securities Act did not apply to certain transactions because none of the offers to sell or offers to buy the subject securities occurred in Alabama; however, this Court ultimately declined to consider that argument, holding instead that mandamus review of the trial court's decision denying a motion to dismiss on that ground was inappropriate.

. Walter Energy potentially could have asserted a claim against the Audley defendants based on similar federal securities-regulation statutes; however, it has elected not to do so, stating in its complaint that "the claims asserted herein are based entirely on Alabama law, and no claims are asserted under any federal law.”

. Our holding on this issue obviates the need to review the trial court’s alternate basis for dismissing Walter Energy’s Alabama Securities Act claim, specifically, that Walter Energy lacks standing to pursue such a claim because it has not alleged that it purchased any shares of Walter Energy stock following the Audley defendants’ alleged scheme to manipulate the share price. See, e.g., Cowin v. Bresler, 741 F.2d 410 (D.C.Cir.1984) (holding that a party that was neither a purchaser nor a seller of the securities involved lacked standing to seek injunctive relief under the federal counterpart to § 8-6-17).

. Walter Energy does not explain in its complaint how the Audley defendants allegedly interfered with its relationship with other Walter Energy shareholders. In its brief to this Court, Walter Energy explains that the reports of an upcoming sale or merger spread by the Audley defendants were untrue, "but shareholders believed them, and when Walter Energy failed to act on any of the purported acquisition offers, shareholders justifiably assumed that Walter Energy's board and management were resistant to change and indifferent to shareholder' interests.” Walter Energy’s brief, p. 25.